NINA F. LOCKER, State Bar No. 123838
STEVEN D. GUGGENHEIM, State Bar No. 201386
CAZ HASHEMI, State Bar No. 210239
CAMERON P. HOFFMAN, State Bar No. 229316
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email: choffman@wsgr.com

Attorneys for Nominal Defendant
BROCADE COMMUNICATIONS
SYSTEMS, INC.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE BROCADE COMMUNICATIONS SYSTEMS, INC. DERIVATIVE LITIGATION. | CASE NO.: C05-02233 CRB |
| This Document Relates to: | **NOMINAL DEFENDANT BROCADE COMMUNICATIONS SYSTEMS, INC.'S MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT** |
| ALL ACTIONS | |
| | Date: December 2, 2005 |
| | Time: 10:00 a.m. |
| | Before: Hon. Charles R. Breyer |

## NOTICE OF MOTION AND MOTION

Please take notice that on December 2, 2005 at 10:00 a.m., before the Honorable Charles R. Breyer of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California, nominal defendant Brocade Communications Systems, Inc. ("Brocade" or "the Company") will, and hereby does, move to dismiss Plaintiff's Consolidated Amended Complaint (the "CAC" or "Complaint").

Brocade requests that the Court dismiss the Complaint in its entirety pursuant to Rule 23.1 of the Federal Rules of Civil Procedure and Delaware law.  Plaintiffs lack standing to pursue derivative claims on behalf of Brocade because they failed to make a pre-litigation demand on the Company's Board of Directors and have not alleged particularized facts showing that demand would be futile.  In addition, the Complaint does not satisfy the verification and contemporaneous ownership requirements of Federal Rule of Civil Procedure 23.1.  This motion is supported by the following memorandum, the accompanying Request for Judicial Notice, the Declaration of Cameron P. Hoffman and attached exhibits, the arguments of counsel, and any other matters properly before the Court.

## STATEMENT OF ISSUES (Civil L.R. 7-4(a)(3))

1.      Whether Plaintiffs have alleged with particularity sufficient facts to excuse their failure to make a pre-litigation demand on Brocade's Board of Directors, as required by Delaware substantive law and Federal Rule of Civil Procedure 23.1.

2.      Whether the Complaint complies with the verification and contemporaneous ownership requirements of Federal Rule of Civil Procedure 23.1.

## SUMMARY OF ARGUMENT (Standing Order)

This consolidated shareholder derivative action is purportedly brought on behalf Brocade, a leading provider of data storage networking products and services.  The crux of the Complaint is Plaintiffs' charge that the individual defendants breached their fiduciary duties by permitting Brocade to file erroneous financial statements.  According to Plaintiffs, the individual defendants knew that Brocade "improperly recorded charges for stock based compensation expense" and yet permitted the Company to issue its financial statements.  CAC ¶¶ 1, 9-19.  Plaintiffs also allege

1   insider trading against two of the Company's officers, and assert claims against the Company's

2   independent auditor, KPMG, LLP ("KPMG"), for alleged negligence, malpractice, and "aiding

3   and abetting."  Plaintiffs concede that they did <u>not</u> make a pre-suit demand on Brocade's Board

4   either with respect to the claims against the individual defendants or the claims against KPMG.

5       By this Motion, Brocade asks this Court to dismiss the Complaint in its entirety for

6   failure to satisfy the demand requirement.  Plaintiffs do not have standing to bring these claims

7   because they failed to serve a demand prior to commencing this action, and they have alleged *no*

8   facts -- let alone *particularized* facts -- showing that Brocade's Board was disabled from

9   considering a demand.  *Brehm v. Eisner*, 746 A.2d 244, 254 (Del. 2000) (derivative plaintiff's

10  complaint must comply with "stringent requirements of factual particularity" in order to

11  demonstrate demand futility).  To the contrary, Plaintiffs' own allegations demonstrate that

12  Brocade's Board was perfectly capable of considering fairly any shareholder demand against the

13  individual defendants and third party KPMG, had one been made.

14      As Plaintiffs themselves allege, in the last year, Brocade's Board (and specifically the

15  Audit Committee) have engaged in *two separate internal investigations* into various aspects of

16  the Company's accounting and internal controls.  CAC ¶¶ 67, 75.  As Plaintiffs themselves

17  allege, these investigations -- which were initiated by the *same* Board Plaintiffs contend is

18  disabled -- have led the Company to restate its financial results not once, but twice.  *Id.*

19      In light of these events, which Plaintiffs themselves portray in detail, the Complaint's

20  boilerplate allegations of demand futility are plainly insufficient.  *Levine v. Smith*, 591 A.2d 194,

21  207 (Del. 1991) ("[c]onclusory allegations of fact or law" are insufficient to demonstrate demand

22  futility), *overruled on other grounds, Brehm v. Eisner*, 746 A.2d 244 (Del. 2000) (citation

23  omitted).  The Complaint does not plead with any particularity, much less the requisite

24  particularity, that a majority of the directors were either interested or lacked independence. *Rales*

25  *v. Blasband*, 634 A.2d 927, 934 (Del. 1993) (plaintiffs must plead particularized facts creating a

26  reasonable doubt that "the board of directors could have properly exercised its independent and

27  disinterested business judgment in responding to a demand").  The Complaint fails to identify

28  *any* facts regarding specific documents, conversations, meetings or reports from which any

1   director would have learned that the Company's financial statements did not properly account for

2   stock based compensation expenses.  The Complaint also fails to identify a single "red flag"

3   regarding the Company's accounting for stock options that the directors failed to heed.

4   Therefore, the Complaint fails to establish that any of the directors face a "substantial likelihood"

5   of personal liability for the alleged wrongdoing and are thus interested.  *Aronson v. Lewis*, 473

6   A.2d 805, 815 (Del. 1984), *overruled on other grounds, Brehm v. Eisner*, 746 A.2d 244 (Del.

7   2000).  In addition, the Complaint's boilerplate allegations regarding compensation received by

8   the Board members and plain vanilla business relationships fail to establish that any of the

9   directors lacked independence -- that is, that any director was so "beholden" to any other

10  Brocade director or officer that his "discretion would be sterilized." *Rales*, 634 A.2d at 936.

11       Far from demonstrating that a Board majority had a disabling interest or lacked

12  independence (*Aronson*, 473 A.2d at 809), the Complaint's allegations make clear that Brocade's

13  Board was and is *determined* to address and correct any alleged accounting errors that may have

14  occurred.  There is, thus, no reason to conclude that the Board would have treated a shareholder

15  demand with any less care, and Plaintiffs have proffered none.  In short, Plaintiffs have alleged

16  no facts, let alone the *particularized* facts essential to demonstrate demand futility, and their

17  allegations support exactly the opposite conclusion.  Accordingly, Plaintiffs lack standing to

18  bring these claims on Brocade's behalf and the Complaint should be dismissed.

19       Even apart from Plaintiffs' failure to meet the stringent pleading requirements applicable

20  here, Plaintiffs have also failed to comply with the verification and contemporaneous ownership

21  requirements of Federal Rule of Civil Procedure 23.1.  *See* Fed. R. Civ. P. 23.1.  Plaintiffs'

22  failure to satisfy these requirements is a separate and further basis upon which to dismiss the

23  Complaint.  *Goldberg v. Meridor*, 81 F.R.D. 105, 110 (S.D.N.Y. 1979) (lack of verification

24  required by Rule 23.1 is grounds for dismissal); *In re Sagent Tech., Inc. Deriv. Litig.*, 278 F.

25  Supp. 2d 1079, 1096 (N.D. Cal. 2003) ("complaint must indicate when plaintiff[] bought stock

26  . . . and must state that they have owned stock continuously" to satisfy Rule 23.1).  For these

27  reasons, and as set forth more fully below, Brocade respectfully requests that Plaintiffs'

28  Complaint be dismissed in is entirety.

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ...................................................................................... i

STATEMENT OF ISSUES (Civil L.R. 7-4(a)(3)) ................................................................... i

SUMMARY OF ARGUMENT (Standing Order) .................................................................... i

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................ 1

INTRODUCTION ........................................................................................................................ 1

BACKGROUND OF THE ACTION ........................................................................................... 1

ARGUMENT ................................................................................................................................ 2

I.   PLAINTIFFS BEAR THE BURDEN OF PLEADING DEMAND FUTILITY
     WITH PARTICULARITY ................................................................................................ 2

II.  PLAINTIFFS HAVE NOT ALLEGED PARTICULARIZED FACTS
     DEMONSTRATING THAT A MAJORITY OF BROCADE'S BOARD HAS A
     DISABLING INTEREST WITH RESPECT TO THE CLAIMS AGAINST THE
     COMPANY AND ITS DIRECTORS AND OFFICERS ................................................... 4

     A.   Plaintiffs Do Not Plead That A Majority Of The Brocade Board Faces A
          Substantial Likelihood Of Personal Liability For Any Alleged
          Misrepresentations ................................................................................................ 5

     B.   Plaintiffs Do Not Plead That A Majority Of The Brocade Board Faces A
          Substantial Likelihood Of Personal Liability For Any Alleged Lack Of
          Oversight ................................................................................................................ 8

     C.   Plaintiffs' Other Allegations Fail to Show that A Majority of the Board Has
          a Disabling Interest ............................................................................................... 9

III. PLAINTIFFS ALSO FAIL TO ALLEGE PARTICULARIZED FACTS
     SHOWING THAT A MAJORITY OF THE BOARD LACKED INDEPENDENCE ..... 10

     A.   Boilerplate Allegations Regarding Defendants' Compensation Do Not
          Excuse Demand ................................................................................................... 11

     B.   Conclusory Allegations of Personal Relationships Are Insufficient To
          Excuse Demand ................................................................................................... 12

IV.  THE COMPLAINT DOES NOT COMPLY WITH FED. R. CIV. P. 23.1 .................... 13

CONCLUSION .......................................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abramson v. Pennwood Inv. Corp.*, 392 F.2d 759 (2d Cir. 1968) ................................ 14

*Arnold v. Society for Sav. Bancorp, Inc.*, 650 A.2d 1270 (Del. 1994) ............................ 5

*Aronson v. Lewis*, 473 A.2d 805 (Del. 1984), *overruled on other grounds*,
  *Brehm v. Eisner*, 746 A.2d 244 (Del. 2000) ..............................................iii, 2, 3, 4

*Ash v. McCall*, No. 17132, 2000 WL 1370341 (Del. Ch. Sept. 15, 2000) ................................. 4, 7

*Beam v. Stewart*, 845 A.2d 1040 (Del. 2004) .......................................... 3, 13

*Blasband v. Rales*, 971 F.2d 1034 (3d Cir. 1992) ....................................... 10

*Brehm v. Eisner*, 746 A.2d 244 (Del. 2000) ......................................ii, 3, 7

*Caruana v. Saligman*, [1990-1991 Tr. Binder] Fed. Sec. L. Rep. (CCH) ¶ 95,889
  (Del. Ch. Dec. 21, 1990) ....................................................... 10

*Citron v. Daniell*, 796 F. Supp. 649 (D. Conn. 1992) ....................................... 7, 12

*Decker v. Clausen*, No. 10,684-85, 1989 WL 133617 (Del. Ch. Nov. 6, 1989) .......................... 10

*Goldberg v. Meridor*, 81 F.R.D. 105 (S.D.N.Y. 1979) ....................................... iii, 13

*Grobow v. Perot*, 539 A.2d 180 (Del. 1988), *overruled on other grounds*,
  *Brehm v. Eisner*, 746 A.2d 244 (Del. 2000) ....................................... 3

*Guttman v. Huang*, 823 A.2d 492 (Del. Ch. 2003) ....................................... 4, 6, 7, 8, 9

*Haber v. Bell*, 465 A.2d 353 (Del. Ch. 1983) ....................................... 3

*In re Abbott Labs. Deriv. Shareholders Litig.*, 325 F.3d 795 (7th Cir. 2003) ........................... 8, 9

*In re BankAmerica Sec. Litig.*, 636 F. Supp. 419 (C.D. Cal. 1986) ................................ 3

*In re Baxter Int'l, Inc. S'holder Litig.*, 654 A.2d 1268 (Del. Ch. 1995) ............................... 5, 7, 8

*In re Caremark Int'l, Inc. Deriv. Litig.*, 698 A.2d 959 (Del. Ch. 1996) ......................... 8

*In re Sagent Tech., Inc. Deriv. Litig.*, 278 F. Supp. 2d 1079 (N.D. Cal. 2003) ......... iii, 5, 8, 12, 14

*In re Walt Disney Co. Deriv. Litig.*, 731 A.2d 342 (Del. Ch. 1998), *aff'd in part*,
  *rev'd in part on other grounds*, *Brehm v. Eisner*, 746 A.2d 244 (Del. 2000) .................. 13

*Kamen v. Kemper Financial Services, Inc.*, 500 U.S. 90 (1991) ................................... 3

*Lefort v. Black*, No. C02-2465, 2003 WL 1563997 (N.D. Cal. Mar. 21, 2003) .......................... 13

*Levine v. Smith*, 591 A.2d 194 (Del. 1991), *overruled on other grounds,*
   *Brehm v. Eisner*, 746 A.2d 244 (Del. 2000)...................................................................ii, 3

*Lewis v. Chiles*, 719 F.2d 1044 (9th Cir. 1983) ...................................................................... 13

*McCall v. Scott*, 239 F.3d 808, *opinion amended on other grounds,*
   250 F.3d 997 (6th Cir. 2001)............................................................................................ 9

*Rales v. Blasband*, 634 A.2d 927 (Del. 1993)................................................................*passim*

*Rattner v. Bidzos*, No. 19700, 2003 WL 22284323 (Del. Ch. Sept. 30, 2003) ....................... 9, 10

*Sax v. World Wide Press, Inc.*, 809 F.2d 610 (9th Cir. 1987) ............................................... 13, 14

*Seminaris v. Landa*, 662 A.2d 1350 (Del. Ch. 1995) ............................................................... 10

*Smachlo v. Birkelo*, 576 F. Supp. 1439 (D. Del. 1983) ............................................................ 13

*Solomon v. Pathe Comm's Corp.*, 672 A.2d 35 (Del. 1996) ...................................................... 3

*Stepak v. Addison*, 20 F.3d 398 (11th Cir. 1994) ..................................................................... 10

*Sucher v. Alon*, C 98-203 CRB, slip op. (N.D. Cal. July 10, 1998) ........................................... 7

*Telxon Corp. v. Meyerson*, 802 A.2d 257 (Del. 2002) ............................................................. 11

*Walden v. Elrod*, 72 F.R.D. 5 (W.D. Okla. 1976) .................................................................... 13

*Washington Bancorporation v. Washington*, [1989-90 Tr. Binder]
   Fed. Sec. L. Rep. (CCH) ¶ 94,893 (D.D.C. Sept. 26, 1989) ............................................... 7

*White v. Panic*, 783 A.2d 543 (Del. 2001) .............................................................................. 10

*White v. Panic*, 793 A.2d 356 (Del. Ch. 2000), *aff'd*, 783 A.2d 543 (Del. 2001).................. 11, 12

**STATUTES**

28 U.S.C. § 1332(a)(2) ............................................................................................................... 14

Del. Code Ann. tit. 8, § 102(b)(7) ............................................................................................... 4

**RULES**

FED. R. CIV. P. 23.1 ............................................................................................... iii, 3, 13

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

The requirements for pleading demand futility are well-established.  Both Delaware law and Rule 23.1 require a derivative plaintiff to plead facts *with particularity* sufficient to demonstrate that a *majority* of a company's directors are incapable of making an impartial decision regarding litigation.  In this case, Plaintiffs, who concede they made no demand on Brocade's Board, wholly fail to meet these stringent pleading requirements.  No facts are alleged to demonstrate that *any* of the Company's nine distinguished Board members are disabled, let alone a Board majority.

## BACKGROUND OF THE ACTION

Brocade is a Delaware corporation headquartered in San Jose, California.  CAC ¶¶ 1, 8.  Brocade designs, sells and supports data storage networking products and services.  *Id*. ¶ 8.  On January 6, 2005, the Company announced that it expected to restate its financial statements for fiscal years 2002 and 2003 "to record additional stock-based compensation expense as a result of an internal review."  *Id*. ¶ 67; Ex. F.[1]  In its press release, the Company explained that it had "determined it incorrectly accounted for" certain stock option grants.  CAC ¶ 67.  Shortly thereafter, on January 24, 2005, Brocade announced that the Audit Committee's internal review was complete, and that the Company would restate its financial statements for 2002 and 2003 and make adjustments to its fiscal year 2004 financial results to "record additional stock-based compensation charges."  *Id*. ¶ 68; Ex. G.  The Company explained that the Audit Committee had concluded the Company had "incorrectly accounted" for certain stock option grants made prior to October 2002, "that there was [an] insufficient basis to rely on the Company's process and related documentation to support recorded measurement dates used to account for certain stock options," and that there were "improprieties"  in connection with the stock option grants to a small number of employees, "which resulted in immaterial adjustments included in the restatement." *Id*.

---

[1] All references to "Ex.___" are to exhibits to the Declaration of Cameron P. Hoffman, filed concurrently herewith.

On May 16, 2005, Brocade announced that "[f]ollowing the completion of [the] Audit Committee review announced on January 24, 2005, additional information came to the Company's attention" regarding charges arising from stock grants that had not previously been restated. *Id.* ¶¶ 2, 75; Ex. H.  In its press release, the Company announced that it would again "restate its financial statements for the fiscal years ending 2002 through 2004 to record additional charges for stock-based compensation expense.  *Id.*  The Company also noted that the Audit Committee had again "commenced an independent review" of issues discovered after the completion of the first Audit Committee investigation and restatement.  *Id.*  Brocade further announced that the Department of Justice and the Securities and Exchange Commission were conducting "a joint investigation regarding the Company's stock option granting practices."  *Id.*

Following the May 16, 2005 release, the first of multiple federal class action lawsuits was filed against Brocade and its senior management alleging claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934.  Not surprisingly, in the following weeks, "tag-along" shareholder derivative actions alleging breach of fiduciary duty and other state law claims were filed in state and federal court.   No demand was made on Brocade's Board.  CAC ¶ 98.[2]

## ARGUMENT

### I.   PLAINTIFFS BEAR THE BURDEN OF PLEADING DEMAND FUTILITY WITH PARTICULARITY

Derivative cases, in which a shareholder purports to bring suit in the name of the company, are subject to special procedural and substantive rules.  Specifically, Delaware law requires that a plaintiff who wishes to proceed derivatively on a corporation's behalf make a demand on the corporation's board of directors prior to filing a lawsuit, or allege with factual particularity why such a demand is excused.  *Aronson v. Lewis*, 473 A.2d 805, 809 (Del. 1984),

---

[2] The state court derivative actions are pending in Santa Clara County Superior Court and were consolidated before the Honorable Jack Komar.  A consolidated complaint was filed on September 19, 2005.  A motion to dismiss or stay the complaint is currently being briefed.

*overruled on other grounds, Brehm v. Eisner*, 746 A.2d 244 (Del. 2000).[3]  The demand requirement "is not merely a technical pleading hurdle."  *In re BankAmerica Sec. Litig.*, 636 F. Supp. 419, 420 (C.D. Cal. 1986).  Rather, it "is a rule of substantive right designed to give a corporation the opportunity to rectify an alleged wrong without litigation, and to control any litigation which does arise."  *Aronson*, 473 A.2d at 809.  To be excused from the demand requirement, it is the derivative plaintiff's burden -- at the pleading stage -- to demonstrate that demand would be futile, *i.e.*, that a majority of the "directors are incapable of making [an] impartial decision regarding litigation."  *Rales v. Blasband*, 634 A.2d 927, 932 (Del. 1993).  This pleading burden is "more onerous than that required to withstand [an ordinary] motion to dismiss.  *Levine v. Smith*, 591 A.2d 194, 207 (Del. 1991), *overruled on other grounds, Brehm v. Eisner*, 746 A.2d 244 (Del. 2000).

The derivative plaintiff's complaint must comply with "stringent requirements of factual particularity" in order to demonstrate demand futility.  *Brehm v. Eisner*, 746 A.2d 244, 254 (Del. 2000).  Indeed, "conclusory allegations of fact or law not supported by allegations of specific fact may not be taken as true."  *Levine*, 591 A.2d at 207 (citation omitted); *see Grobow v. Perot*, 539 A.2d 180, 187 n.6 (Del. 1988), *overruled on other grounds, Brehm v. Eisner*, 746 A.2d 244 (Del. 2000).  Rather, a plaintiff must plead "particularized factual statements" akin to "ultimate facts," "principal facts," or "elemental facts" demonstrating that demand is excused.  *Brehm*, 746 A.2d at 254; *accord Solomon v. Pathe Comm's Corp.*, 672 A.2d 35, 39 (Del. 1996).[4]  If a derivative plaintiff fails to carry this pleading burden, the plaintiff's complaint must be dismissed even if the claim is otherwise meritorious.  *Haber v. Bell*, 465 A.2d 353, 357 (Del. Ch. 1983).

---

[3] Because Brocade is a Delaware corporation, Delaware law governs the extent of the demand requirement and the circumstances under which demand is excused.  *See Kamen v. Kemper Financial Services, Inc.*, 500 U.S. 90, 108-09 & n.10 (1991) (courts "must apply the demand futility exception as it is defined by the law of the State of incorporation").

[4] Shareholder derivative complaints in federal court must also comply with Rule 23.1 of the Federal Rules of Civil Procedure.  The requirement for pleading demand futility with particularity under Rule 23.1 mirrors the requirement under Delaware law that it is the derivative plaintiff's burden -- at the pleading stage -- to demonstrate *with specificity* that demand is excused.  *Compare* Fed. R. Civ. P. 23.1 with *Beam v. Stewart*, 845 A.2d 1040, 1048-49 (Del. 2004); *Rales*, 634 A.2d at 934.

In this case, Plaintiffs concede that they did not make a demand upon Brocade's Board prior to bringing this derivative lawsuit.  CAC ¶ 98.  Plaintiffs thus can maintain this action only if they allege particularized facts showing the futility of demand.  *See Rales*, 634 A.2d at 934. Those facts must create a reasonable doubt that: "(1) the directors are disinterested and independent and (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." *Aronson*, 473 A.2d at 814.  Because Plaintiffs do not challenge any board action, this latter test (the so-called "second prong" of *Aronson*) does not apply.  Rather, the Court must determine whether Plaintiffs' failure to make a pre-suit demand is excused under the first prong of the test – director disinterest and independence.  *Rales*, 634 A.2d at 934; *see Ash v. McCall*, No. 17132, 2000 WL 1370341, at *5, *10 (Del. Ch. Sept. 15, 2000) (directors' failure to oversee company's financial statements amounted to nonfeasance to which only the *Rales* test applies).  As set forth more fully below, the Complaint fails to allege particularized facts creating a reasonable doubt as to the disinterest or independence of a majority of the Board at the time this suit was initiated.  Accordingly, the Complaint should be dismissed.

## II.   PLAINTIFFS HAVE NOT ALLEGED PARTICULARIZED FACTS DEMONSTRATING THAT A MAJORITY OF BROCADE'S BOARD HAS A DISABLING INTEREST WITH RESPECT TO THE CLAIMS AGAINST THE COMPANY AND ITS DIRECTORS AND OFFICERS

To rebut the presumption of disinterestedness, a putative plaintiff must plead *particularized facts* establishing that a majority of directors face a "*substantial likelihood*" of personal liability for the wrongdoing alleged in the complaint.  *See Aronson*, 473 A.2d at 815 (emphasis added); *accord Guttman v. Huang*, 823 A.2d 492, 500 (Del. Ch. 2003).  The "mere threat of personal liability" is *not* sufficient.  *Aronson*, 473 A.2d at 815; *Rales*, 634 A.2d at 936.

In this case, Plaintiffs' pleading burden is even higher because Brocade's certificate of incorporation precludes claims by the Company against its directors for non-intentional conduct.  *See* Ex. E, Article XI.[5]  Thus, causes of action for negligence and recklessness are barred.  *E.g.*,

---

[5] Delaware allows corporations to eliminate directors' personal liability for acts amounting to negligence or recklessness, so long as the acts do not constitute a breach of their duty of loyalty, intentional misconduct or a knowing violation of law.  *See* Del. Code Ann. tit. 8, § 102(b)(7).

*In re Sagent Tech., Inc. Deriv. Litig.*, 278 F. Supp. 2d 1079, 1095 n.9 (N.D. Cal. 2003) (taking judicial notice of § 102(b)(7) provision in articles of incorporation that barred certain individual liability claims); *Arnold v. Society for Sav. Bancorp, Inc.*, 650 A.2d 1270, 1288 (Del. 1994); *In re Baxter Int'l, Inc. S'holder Litig.,* 654 A.2d 1268, 1271 (Del. Ch. 1995).  To excuse demand, therefore, Plaintiffs are required to plead particularized facts establishing that the Company's directors face a substantial likelihood of liability for *intentional*, and not merely negligent, grossly negligent or even reckless, misconduct.  *See Baxter,* 654 A.2d at 1270.   Although Plaintiffs allege a variety of reasons why they claim demand should be excused, none is supported by particularized facts sufficient to meet this heightened pleading standard.[6]

### A. Plaintiffs Do Not Plead That A Majority Of The Brocade Board Faces A Substantial Likelihood Of Personal Liability For Any Alleged Misrepresentations

Plaintiffs assert that that the individual defendants "allow[ed] or "cause[d]" Brocade to misrepresent "the Company's financial results and prospects"  and "to conceal the true fact that Brocade was misrepresenting the expenses incurred . . . in granting lucrative stock based compensation"  CAC ¶¶ 29, 33.   Plaintiffs also allege that each director "was aware of the fact that the Company improperly recorded charges for stock-based compensation . . . . via his access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to him in connection therewith."  *Id*.  ¶¶ 11-19.  However, Plaintiffs fail to identify *any* facts regarding specific documents, conversations, meetings or reports from which any directors would have learned that the stock option accounting was incorrect.[7]   Indeed, there are no particularized allegations that any director had

---

[6] Notably, Plaintiffs make no demand futility claims based upon insider trading.  *See*  CAC ¶¶ 93-94.  In other words, Plaintiffs do not allege that *any* of the nine directors who comprised Brocade's Board at the time this litigation was initiated sold *any* stock over the entire four year putative relevant time frame.  *Id.* (asserting insider trading allegations against *non-director* defendants).  This is particularly noteworthy given Plaintiffs' allegations that the director defendants "owned millions of Brocade shares" (*id.* ¶ 98 (f)), and it belies Plaintiffs' boilerplate allegations that the directors "directly benefited" from the alleged wrongdoing.  *Id.* ¶ 98(g), (k).

[7] This is particularly true with respect to defendants Walker and Klayko.  Plaintiffs admit Mr.
(continued...)

1   knowledge of any alleged accounting error, let alone how, when or where any director

2   supposedly learned of such error.  *See generally* CAC.[8]

3        Plaintiffs also do not identify a single "red flag" that the directors purportedly failed to

4   heed.  *Guttman*, 823 A.2d at 507 (demand not excused where plaintiff failed to "plead a single

5   fact suggesting specific red -- or even yellow -- flags were waved at the outside directors").

6   Significantly, Plaintiffs do not allege that anyone ever alerted the directors to problems with

7   Brocade's stock option accounting practices, much less any other particularized facts suggesting

8   the directors had any reason to question the Company's stock option accounting.  To the

9   contrary, Plaintiffs' claim is flatly inconsistent with other facts that are alleged in the Complaint.

10  As Plaintiffs concede, "KPMG had virtually limitless access to information concerning

11  Brocade's true financial condition and operating results."  CAC ¶ 104.   "KPMG audited

12  Brocade's financial statements for a considerable period of time, had a thorough knowledge of

13  the Company's financial history, accounting practices, internal controls, and business

14  operations."  *Id*. ¶ 108.  Specifically, "KPMG conducted quarterly reviews and annual audits of

15  each of Brocade's . . . interim  and annual financial statements filed with the SEC on Forms 10-Q

16  and 10-K, respectively."  *Id*. ¶ 103.  In fact, "KPMG played a pivotal role in the creation of these

17  filings."  *Id*. ¶ 102.  Plaintiffs specifically allege that "KPMG had the opportunity to review the

18  Company's policies and procedures concerning the granting of equity based compensation,

19  ─────────────────────

20        (...continued from previous page)
    Walker joined the Board on April 27, 2005, well after all of Plaintiffs' purportedly substantive
21  allegations CAC ¶ 19.  Yet Plaintiffs' offer *no* particularized factual allegations explaining how
    Mr. Walker faces a significant likelihood of liability for alleged misconduct that, by Plaintiffs'
22  own admission, ***all*** occurred prior to his Board membership.  Likewise, Mr. Klayko joined the
    Board in January, 2005, upon being promoted to C.E.O. after several years in Brocade's sales
23  organization.  CAC ¶ 11.  It is difficult to imagine that he could face any liability for the alleged
    wrongdoing, much less a significant likelihood of liability.
24
25        [8] Curiously, the Complaint also alleges that the individual defendants allowed or caused "the
    Company to misrepresent the safety of its products," thus subjecting the Company "to personal
26  injury lawsuits as a result of the misrepresentations regarding the safety of its products."  CAC ¶
    29; *see also id*. ¶ 32.  These allegations make no sense.  Plaintiffs do not contend that there are
27  any safety issues with Brocade's products, and we cannot conceive of a scenario under which
    such issues would arise.  These allegations, like all of Plaintiffs' demand futility allegations, are
28  demonstrative of Plaintiffs' disregard for their pleading obligations.

1    including the vesting of options, with Brocade's Board of Directors, Audit Committee,

2    Compensation Committee, and Senior Management." *Id*. ¶ 104.

3         Notwithstanding KPMG's access and involvement or Plaintiffs' acknowledgment that

4    KPMG "was required to be vigilant in auditing the impact of equity-based compensation and

5    granting of options" (*id*. ¶ 106), Plaintiffs **concede** that KPMG unequivocally signed off on

6    Brocade's financial results.  *Id*. ¶ 103; *see also* Exs. A at 36, B at 40, C at 43.  Thus, by

7    Plaintiffs' own admission, the directors sought and obtained the advice of outside experts in

8    connection with the Company's financials and are, therefore, fully protected from personal

9    liability for any alleged improper accounting.  *See Ash v. McCall*, 2000 WL 1370341, at *9*;

10   *Brehm,* 746 A.2d at 261 (a "Board is entitled to the presumption that it exercised proper business

11   judgment, including proper reliance on the expert").

12        Plaintiffs' failure to identify any documents that any of the directors purportedly received

13   or any conversation that any director had with any officers, employees, or outside auditors

14   demonstrating knowledge of the accounting errors is "fatal to plaintiffs' effort to show demand

15   excusal."  *Guttman*, 823 A.2d at 504; *see Sucher v. Alon*, C 98-203 CRB, slip op. at 4 (N.D. Cal.

16   July 10, 1998) ("Plaintiff's allegations that the Audit Committee directors took no action to

17   assure a systems of controls was in place is wholly inadequate since plaintiff does not allege any

18   specific facts to support his conclusory claim."); *Baxter*, 654 A.2d at 1270 (court cannot

19   "conclude that there is a substantial likelihood of liability" without particularized facts showing

20   directors "ignore[d] 'obvious danger signs of employee wrongdoing'") (citation omitted).[9]

21   _____

22        [9] Plaintiffs cannot excuse their failure to plead defendants' knowledge by resorting to
     generic allegations.  It insufficient to allege that defendants engaged in a "conspiracy."  CAC
23   ¶¶ 31-36; *Washington Bancorporation v. Washington*, [1989-90 Tr. Binder] Fed. Sec. L. Rep.
     (CCH) ¶ 94,893, at 94,886 (D.D.C. Sept. 26, 1989)  (conclusory allegation directors engaged in
24   "scheme or conspiracy" fail to set forth "particularized factual allegations").  The allegation that
     three directors served on the Audit Committee, who "reviews the accounting principles and
25   auditing practices and procedures to be used in preparing" financial statements and Brocade's
     "internal controls" is also insufficient.  *Id*. ¶¶ 98(c).  Such an allegation fails to show defendants'
26   knowledge of accounting improprieties.  *See Citron v. Daniell*, 796 F. Supp. 649, 652 (D. Conn.
     1992) (rejecting as conclusory allegation that audit committee membership afforded opportunity
27   to detect and correct errors); *Sucher v. Alon*, slip op. at 3-4  (audit committee membership
     insufficient to excuse demand).

28

### B.    Plaintiffs Do Not Plead That A Majority Of The Brocade Board Faces A Substantial Likelihood Of Personal Liability For Any Alleged Lack Of Oversight

Since there are no particularized allegations showing Brocade's directors knew about the alleged accounting errors, at bottom, the claims against the directors are grounded upon the contention that they failed to exercise adequate oversight regarding Brocade's affairs.  In *In re Caremark Int'l, Inc. Deriv. Litig.*, 698 A.2d 959 (Del. Ch. 1996), the court explained that director liability for alleged inadequate oversight is "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment."  *Id.* at 967; *Sagent*, 278 F. Supp. 2d at 1090-92 (boilerplate allegations that directors failed to establish and maintain accounting controls insufficient).  As such, when director liability is predicated upon failure to prevent or correct the liability-creating activity, "only a sustained or systematic failure of the board to exercise oversight . . . will establish the lack of good faith that is a necessary condition to liability."  698 A.2d at 971; *see also Guttman*, 823 A.2d at 507; *Baxter,* 654 A.2d at 1270-71 (rejecting conclusory allegations directors condoned or failed to prevent misconduct).

Plaintiffs' own allegations belie any suggestion of abdication of duty by the Board or the Audit Committee.  The Complaint alleges that, during the Company's fiscal year 2004, the full Board held four meetings, the Audit Committee met eight times, the Nominating and Corporate Governance Committee met four times, and the Compensation Committee met twice.  CAC ¶ 22. Thus, the Board and its committees held *eighteen* separate meetings during one fiscal year, or approximately one meeting every two weeks.  Moreover, by Plaintiffs' admission, "[e]ach director attended 75% of the total number of meetings of the Board and Board committees of which he was a member, except for Dempsey who attended 72%."  *Id.*   As such, Plaintiffs' own Complaint defeats their purported *Caremark* claim.  *See Guttman*, 823 A.2d at 507 (plaintiff failed to state a claim where complaint lacked allegations that company lacked an audit committee, committee met only sporadically and devoted patently inadequate time to its work, or committee had clear notice of serious accounting irregularities and simply chose to ignore them).

These undisputed facts make this case fundamentally different from the rare cases in which *Caremark* claims have succeeded.  For example, *In re Abbott Labs. Deriv. Shareholders*

1   *Litig.,* 325 F.3d 795, 809 (7th Cir. 2003), the court found the plaintiffs had pleaded sufficiently

2   particularized facts to support a failure of oversight claim.  "We find that six years of

3   noncompliance, inspections, 483s, Warning Letters, and notice in the press, all of which then

4   resulted in the largest civil fine ever imposed by the FDA and the destruction and suspension of

5   products which accounted for approximately $250 million in corporate assets, indicate that the

6   directors' decision to not act was not made in good faith." *Id.* at 809 (*citing McCall v. Scott*, 239

7   F.3d 808, 818, *opinion amended on other grounds,* 250 F.3d 997 (6th Cir.  2001) (directors

8   sustained failure to act against corporation's systematic health care fraud occurring from at least

9   1994 to 1996 alleged sufficient facts to demonstrate demand futility)).  There are simply no

10  similar allegations here.

11          The Complaint is devoid of any particularized factual allegation suggesting that the

12  Board (including members of the Audit Committee) "had clear notice of serious accounting

13  irregularities and simply chose to ignore them or, even worse, to encourage their continuation."

14  *Guttman*, 823 A.2d at 507.  To the contrary, the facts Plaintiffs do allege show that Brocade's

15  directors honored their fiduciary obligations and were given the green light from independent

16  auditors with respect to the Company's financial statements.  Under these circumstances,

17  Plaintiffs have not alleged the requisite substantial likelihood of liability on the part of the

18  directors, and demand is not excused.

19          **C.      Plaintiffs' Other Allegations Fail to Show that A Majority of the Board Has a
                      Disabling Interest**

20

21          Plaintiffs allege that "[a]ny suit by the current directors . . . would likely expose" the

22  directors and Brocade "to further violations of the securities laws that would result in civil

23  actions being filed" and, "thus, they are hopelessly conflicted in making any supposedly

24  independent determination."  CAC ¶ 98(l).  Plaintiffs also allege that the directors would not

25  bring this suit against themselves for fear of "impair[ing] their defense of the class actions" and

26  "increas[ing] the probability of their personal liability in the class actions."  *Id.* ¶ 98(n).  These

27  same conclusory allegations regarding potential liability in federal class actions have routinely

28  been held to be insufficient for demand futility.  *E.g., Rattner v. Bidzos*, No. 19700, 2003 WL

1   22284323, at *14  (Del. Ch. Sept. 30, 2003) (conclusory allegations about potential liability in

2   federal securities class actions are "insufficient to satisfy the demand excusal requirement");

3   *Seminaris v. Landa*, 662 A.2d 1350, 1354-55 (Del. Ch. 1995) (allegations that directors were

4   named defendants in several pending securities class actions and subjects of ongoing SEC

5   investigation did not create a "reasonable doubt" that the directors were disinterested). [10]

6         Plaintiffs' contention that demand would be futile because the "Board ha[s] not filed any

7   lawsuits against themselves or others" (CAC ¶ 98(m)) is similarly insufficient.  *See, e.g.*,

8   *Blasband v. Rales*, 971 F.2d 1034, 1052 (3d Cir. 1992) (a "[b]oard's failure to take action, even

9   if it is aware of wrongdoing, does not demonstrate [demand] futility").  To hold otherwise would

10  eviscerate the Board's "authority to initiate or to refrain from initiating legal actions asserting

11  rights held by the corporation."  *White v. Panic*, 783 A.2d 543, 550 (Del. 2001).  The absurdity

12  of such a position is particularly evident in this case, where the Board and the Audit Committee

13  have pro-actively initiated and supported two significant internal investigations into the matters

14  at issue, spanning an entire year, that have resulted in the restatement of Brocade's financial

15  results on two separate occasions.  *See, e.g.*,  CAC ¶¶ 81-86 (describing ongoing restatement

16  activity in August and September, 2005).

17  **III.   PLAINTIFFS ALSO FAIL TO ALLEGE PARTICULARIZED FACTS SHOWING
        THAT A MAJORITY OF THE BOARD LACKED INDEPENDENCE**

18

19        Because Plaintiffs fail to show that any director has a disqualifying interest, Plaintiffs can

20  only satisfy the demand futility standard by pleading particularized facts establishing that the

21  majority of the directors lacked independence.  When lack of independence is charged, the

22  question is whether the purported controlling person(s) had "the direct or indirect unilateral

23

24        [10] Plaintiffs' allegation that defendants would be unwilling to initiate litigation because there
        might be an "insured verses insured exclusion" in D&O liability insurance policies (CAC ¶
25      98(o)), has been rejected repeatedly by courts as nothing more than a "variation[] on the
        'directors suing themselves' and 'participating in the wrongs' refrain."  *Decker v. Clausen*, No.
26      10,684-85, 1989 WL 133617, at *2 (Del. Ch. Nov. 6, 1989)  (citation omitted); *see Stepak v.
        Addison*, 20 F.3d 398, 411 (11th Cir. 1994)   (rejecting identical allegation) (citation omitted);
27      *see also Caruana v. Saligman*,  [1990-1991 Tr. Binder] Fed. Sec. L. Rep. (CCH) ¶ 95,889, at
        99,379 (Del. Ch. Dec. 21, 1990) (same).

28

1   power to decide whether the director continues to receive a benefit upon which the director is so

2   dependent or is of such subjective material importance that its threatened loss" creates a

3   reasonable doubt that the director will be able to consider objectively the merits of a demand.

4   *Telxon Corp. v. Meyerson*, 802 A.2d 257, 264 (Del. 2002); *Rales*, 634 A.2d at 936 (to plead lack

5   of independence excusing demand, plaintiff must show that each director was so "beholden" to

6   the controlling person that his "discretion would be sterilized").  Absent particularized factual

7   allegations to that effect, demand is not excused.  Plaintiffs fail to plead any facts, let alone

8   particularized facts, demonstrating a lack of independence by a majority of Brocade's Board.

9          **A.      Boilerplate Allegations Regarding Defendants' Compensation Do Not Excuse
                     Demand**

10

11         Plaintiffs allege that defendants Dempsey, Krause and Vaswani, as the Brocade

12   Compensation Committee, "singularly control the other defendants'" stock option awards, and

13   thus "the remaining members of the Board will not institute this action" against them because

14   "[t]o do so would jeopardize each defendant's personal financial compensation."  CAC ¶ 98(a).

15   Plaintiffs claim defendant Klayko lacks independence from the members of the Compensation

16   Committee for the additional reason that they "exert influence over defendant Klayko's

17   compensation" as an officer of the Company -- namely his alleged base salary of $520,000,

18   incentive bonus of $390,000 and grant of 1,000,000 stock options.  *Id*. ¶ 98(b).  Plaintiffs'

19   boilerplate allegations fail to raise a reasonable doubt as to any director's independence.

20         As an initial matter, Plaintiffs plead no particularized facts establishing that defendants

21   Dempsey, Krause or Vaswani are interested in the alleged wrongdoing, and thus their purported

22   control over the other directors is irrelevant to whether those directors could fairly consider a

23   demand.  *See* Point II, *supra,* at 4-10.  Additionally, Plaintiffs plead no particularized facts

24   demonstrating that the perquisites received for membership on the Brocade Board are outside the

25   range of industry norms or that they are relevant to any of the directors' net worth in such a way

26   as to taint his judgment.  *White v. Panic*, 793 A.2d 356, 366 & n.34 (Del. Ch. 2000), *aff'd*, 783

27   A.2d 543 (Del. 2001).  Rather, the directors' significant leadership positions at other major

28   companies and institutions actually belie any suggestion that the $25,000 of annual directors fees

1   and $20,000 of annual stock options they received for their service on Brocade's Board rendered

2   them incapable of discharging their duties in an independent and disinterested manner.  *See* Ex.

3   D (describing each director's business background).  In the absence of any particularized

4   allegations establishing that the alleged fees and options were so material to the director as to

5   raise a reasonable doubt about their independence, Plaintiffs allegations that the directors lack

6   independence from the members of the Compensation Committee fail.

7       With respect to defendant Klayko, Plaintiffs also fail to plead particularized facts

8   demonstrating that the compensation he receives from Brocade is significant when compared to

9   his personal worth, or that maintaining that compensation is so material to him that his

10  motivations may reasonably be questioned.  *See White v. Panic*, 793 A.2d at 366 & n.34

11  (demand not excused where plaintiff failed to allege specific facts showing that amount paid to

12  director "was so material" as to taint his judgment).  Instead, Plaintiffs' claims are no more than

13  the oft-dismissed boilerplate allegation that Klayko "acted or would act to preserve [his]

14  positions." *Sagent*, 278 F. Supp. 2d at 1089; *see Citron*, 796 F. Supp. at 652 ("[a] shareholder

15  must plead particularized facts demonstrating a financial interest – other than merely receiving a

16  salary or compensation").   In fact, Plaintiff's claims regarding defendant Klayko are so

17  boilerplate that he is referred to as "defendant Patrick Smith," an individual whom defendants do

18  not know. CAC ¶ 98(b).

19      **B.      Conclusory Allegations of Personal Relationships Are Insufficient To Excuse
                Demand**

20

21      Plaintiffs also allege purported "prejudicial entanglements" in which current directors

22  previously worked at the same companies (CAC ¶ 98(e)), but these allegations are of the most

23  conclusory variety conceivable.  Plaintiffs allege that Klayko and Walker were both employed by

24  Hewlett-Packard -- a massive company with tens of thousands of employees-- at unidentified

25  times in unidentified positions, and thus lack independence from one another.  *Id*. ¶ 98(e)(ii).

26  Plaintiffs also allege that Paisley and Krause had a five year employment overlap at 3Com

27  fifteen years ago, and therefore "will not take the action requested by plaintiffs herein against

28  one another."  *Id*. ¶ 98(e)(i).  Delaware law rejects the claim that demand would be futile "just

1  because directors would have to sue 'their friends, family and business associates.'" *In re Walt*

2  *Disney Co. Deriv. Litig.*, 731 A.2d 342, 355 n.18 (Del. Ch. 1998), *aff'd in part, rev'd in part on*

3  *other grounds*, *Brehm v. Eisner*, 746 A.2d 244 (Del. 2000) (citation omitted); *see also Beam*, 845

4  A.2d at 1051 (Allegations that directors "moved in the same social circles, attended the same

5  weddings, developed business relationships before joining the board, and described each other as

6  'friends'" were insufficient.). Plaintiffs fail to allege particularized facts showing any director is

7  so beholden to any other Brocade officer or director that he would favor the other's interest over

8  that of Brocade.[11]

9  **IV.   THE COMPLAINT DOES NOT COMPLY WITH FED. R. CIV. P. 23.1**

10      Federal Rule of Civil Procedure 23.1 sets forth the procedural requirements for bringing a

11  derivative action in federal court. *Sax v. World Wide Press, Inc.*, 809 F.2d 610, 613 (9th Cir.

12  1987); *Lefort v. Black*, No. C02-2465, 2003 WL 1563997, at *2 (N.D. Cal. Mar. 21, 2003).  The

13  Complaint here runs afoul of three of Rule 23.1's express requirements and, as a result, dismissal

14  is appropriate. *Id.* at *4 (dismissing complaint where plaintiff failed to comply with Rule 23.1).

15      First, Plaintiffs have not verified the Complaint. *See* FED. R. CIV. P. 23.1 (lack of

16  verification among grounds for dismissal of derivative claim); *Smachlo v. Birkelo*, 576 F. Supp.

17  1439, 1442-43 (D. Del. 1983) (Rule 23.1 verification requirement not to be taken lightly);

18  *Goldberg v. Meridor*, 81 F.R.D. 105, 110 (S.D.N.Y. 1979) (lack of verification required by Rule

19  23.1 is grounds for dismissal); *Walden v. Elrod*, 72 F.R.D. 5, 12 (W.D. Okla. 1976) (same).

20      Second, the Complaint lacks allegations showing that Plaintiffs were "shareholder[s] . . .

21  at the time of the transaction of which [they] complain[]." FED. R. CIV. P. 23.1; *Lewis v. Chiles*,

22  719 F.2d 1044, 1047 (9th Cir. 1983).  The Complaint simply alleges in conclusory fashion that

23  "[p]laintiff is and was an owner of Brocade common stock during all times relevant to the

---

25  [11] Plaintiffs also do not allege particularized facts showing why Brocade's Board could
26  not act in an independent and disinterested manner in considering a demand to bring suit against
    KPMG, a third party.  Plaintiffs were required to allege particularized *facts* showing that each
27  director was so "beholden" to or so under the influence of KPMG that his "discretion would be
    sterilized." *Rales*, 634 A.2d at 936.  In their Complaint, however, Plaintiffs allege **no facts of any**
28  **kind** that even attempt to establish demand futility with respect to KPMG.  As a result, Plaintiffs
    also lack standing to pursue any claim against KPMG.

Individual Defendants' wrongful course of conduct alleged [in the complaint], and remains a Brocade shareholder."  CAC ¶ 97, *see also id.* ¶ 7.  That does not suffice.  *Sagent*, 278 F. Supp. 2d at 1096 (complaint "must indicate when [the plaintiff] bought stock . . . and must state that they have owned stock continuously" in order to satisfy Rule 23.1); *see also Abramson v. Pennwood Inv. Corp.*, 392 F.2d 759, 761-62 (2d Cir. 1968) (unsworn statement that appellant was stockholder at the time of transaction in derivative complaint did not satisfy Rule 23).

Finally, nowhere in the one hundred and forty seven paragraph Complaint do Plaintiffs identify themselves.  While Plaintiffs makes the boilerplate allegation that "Plaintiff is a citizen of the State of New York" (CAC ¶ 7), "Plaintiff will adequately and fairly represent" Brocade's interests (*id.* ¶ 96), and "Plaintiff is and was an owner of Brocade common stock" (*id.* ¶ 97), Plaintiffs **never** state their names in the complaint.  *See generally* CAC.  Moreover, while Court previously appointed four co-lead Plaintiffs (at Plaintiffs' request), most references to Plaintiffs in the Complaint are made in the singular form.  *E.g., id.* ¶¶ 7, 97-98; *but see id.* ¶ 98.  Thus, the Complaint appears to be filed on behalf of one anonymous purported Brocade shareholder.  Given that Plaintiffs must verify the Complaint and plead facts establishing continuous stock ownership to satisfy Rule 23.1, and must establish complete diversity of citizenship between the parties in order to bring this action pursuant to 28 U.S.C. § 1332(a)(2), Plaintiffs failure to plead identifying facts with respect to each plaintiff on whose behalf the Complaint is purported brought renders the Court's analysis of these threshold requirements difficult, if not impossible.

## CONCLUSION

For the foregoing reasons, Plaintiffs have no legal standing to pursue this derivative action and the Consolidated Amended Complaint should be dismissed.

Dated:  October 27, 2005

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By:  _____/s/ Nina F. Locker_____
Nina F. Locker

Attorneys for Nominal Defendant
Brocade Communications Systems, Inc.

1    I, Cameron P. Hoffman, am the ECF User whose identification and password are being

2  used to file this Nominal Defendant Brocade Communications Systems, Inc.'s Motion to Dismiss

3  Consolidated Amended Complaint.  In compliance with General Order 45.X.B, I hereby attest

4  that Nina F. Locker has concurred in this filing.

5  Dated:  October 27, 2005                    WILSON SONSINI GOODRICH & ROSATI
                                               Professional Corporation
6

7
                                               By: /s/ Cameron Hoffman
8                                                    Cameron Hoffman

9                                              Attorneys for Nominal Defendant
                                               Brocade Communications Systems, Inc.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28