1  DEWEY & LEBOEUF LLP
   1950 University Avenue, Suite 500
2  East Palo Alto, California  94303
   Tel:  (650) 845-7000
3  Fax:  (650) 845-7333

4  DEWEY & LEBOEUF LLP
   1101 New York Avenue, N.W., Suite 1100
5  Washington, D.C.  20005
   Tel:  (202) 346-8000
6  Fax:  (202) 346-8102

7
   *Attorneys for Plaintiff*
8  *Brocade Communications Systems, Inc.*

9

10                     **UNITED STATES DISTRICT COURT**

11                    **NORTHERN DISTRICT OF CALIFORNIA**

12 _____

13 **BROCADE COMMUNICATIONS**          )
   **SYSTEMS, INC.,**                  )
                                       )
14                                     )
                      **Plaintiff,**   )  **Case No. C05-02233 CRB**
15                                     )
   **vs.**                             )
16                                     )
   **GREGORY L. REYES, STEPHANIE**     )  **SECOND AMENDED COMPLAINT**
17 **JENSEN, MICHAEL J. BYRD, ANTONIO**)
   **CANOVA, NEAL DEMPSEY, MARK**      )
18 **LESLIE, SETH D. NEIMAN, PAUL R.** )
   **BONDERSON, JR., ROBERT D. BOSSI,**)
19 **AND JACK CUTHBERT,**              )  <u>**JURY TRIAL DEMANDED**</u>
                                       )
20                  **Defendants.**    )
                                       )
21

22

23

24

25

26

27

28

                          SECOND AMENDED COMPLAINT

# TABLE OF CONTENTS

Introduction ..................................................................................................................1

The Parties ..................................................................................................................3

Jurisdiction and Venue..................................................................................................8

Nature and Summary of the Action ..............................................................................9

Brocade's Option-Granting Process ............................................................................27

Committee-of-One Grants ..........................................................................................38

Compensation Committee Grants................................................................................103

Board of Directors Grants............................................................................................109

Leaves of Absence and Related Matters......................................................................120

Brocade's Finance Department....................................................................................137

Defendants' Knowledge and Roles: General Allegations ...........................................150

Defendants' Knowledge and Roles: Defendant-Specific Allegations...........................173

Harms Suffered By Brocade ........................................................................................248

FIRST CAUSE OF ACTION .......................................................................................250

SECOND CAUSE OF ACTION ...................................................................................260

THIRD CAUSE OF ACTION.......................................................................................262

FOURTH CAUSE OF ACTION....................................................................................264

FIFTH CAUSE OF ACTION .......................................................................................266

SIXTH CAUSE OF ACTION .......................................................................................267

SEVENTH CAUSE OF ACTION..................................................................................268

EIGHTH CAUSE OF ACTION .....................................................................................270

NINTH CAUSE OF ACTION........................................................................................271

TENTH CAUSE OF ACTION .......................................................................................276

ELEVENTH CAUSE OF ACTION ...............................................................................277

TWELFTH CAUSE OF ACTION..................................................................................279

THIRTEENTH CAUSE OF ACTION ...........................................................................279

Prayer For Relief..........................................................................................................280

SECOND AMENDED COMPLAINT

Jury Demand ...................................................................................................282

iii

1                                        **SECOND AMENDED COMPLAINT**

2       "Q.     Did you come to understand that one of Brocade's kind of corporate

3 philosophies or policies was to try to get the most advantageous stock price for –

4 or stock option price for its employees?

5       A.     Yes." – Paul R. Bonderson, Jr.

6

7       "Q.     Do you believe Mr. Reyes understood the implications of granting an

8 option below fair market value?

9       A.     Well, . . . I don't know how you could work in Silicon Valley and not

10 know the implications of that, so . . . yeah." – Craig Isom (Arthur Andersen

11 partner on Brocade account)

12

13       "IT IS ILLEGAL TO BACK DATE OPTION GRANTS." – Gregory L. Reyes

14                                                    \* \* \* \*

15       Plaintiff Brocade Communications Systems, Inc. ("Brocade" or the "Company"),

16 by its attorneys and acting through the Special Litigation Committee of its Board of Directors,

17 submits this Second Amended Complaint (the "Complaint") and alleges as follows:

18                                          **INTRODUCTION**

19       1.     Brocade brings this action against ten of its former officers, directors, and

20 employees (collectively, the "Defendants") for losses it has suffered as a result of a six-year

21 scheme in which Defendants sought to provide enhanced compensation to Brocade personnel

22 (including themselves) while understating and misrepresenting the financial costs of the extra

23 compensation they were distributing. Defendants implemented this scheme by backdating and

24 otherwise manipulating the Company's stock options, falsifying employment records and

25 documents relating to stock options, filing inaccurate financial statements with the Securities and

26 Exchange Commission (the "SEC"), and making misrepresentations to Brocade's independent

27 auditors and the public.

28       2.     The revelation of Defendants' conduct required Brocade to restate its prior

1   financial statements twice in 2005 to reflect hundreds of millions of dollars in previously

2   unreported non-cash compensation expenses arising from improper conduct related to stock

3   options.

4          3.     The results of this misconduct have been devastating.  Brocade already has spent

5   hundreds of millions of dollars to investigate the underlying activity, to defend legal actions by

6   shareholders and government regulators, to advance defense costs to Defendants and other

7   present and former personnel in connection with governmental and private investigations and

8   judicial proceedings, and to settle a shareholder class action asserting that Brocade had

9   misrepresented its financial condition between 2000 and 2005.  In addition, Brocade was unable

10  to complete a sale of the Company because of the accounting issues and other problems arising

11  from the options-backdating scheme.  And two defendants – Brocade's former Chairman and

12  Chief Executive Officer and its former Vice President of Human Resources – were found guilty

13  of federal criminal charges and were sentenced to prison terms.

14         4.     On or about February 22, 2008, Brocade's Board of Directors established a

15  Special Litigation Committee (the "SLC") to act on behalf of the Company in connection with

16  various shareholder derivative actions that had been filed in federal and state courts.  The Board

17  gave the SLC plenary authority to pursue or resolve the claims raised in the derivative actions

18  and all other claims relating to Brocade's historical stock-option practices.

19         5.     The SLC has concluded that the Company's best interest would be served by

20  seeking to hold Defendants responsible for the damage they inflicted on Brocade.

21         6.     The SLC, on behalf of Brocade, therefore decided to assert claims against

22  Defendants for one or more of the following:  (*i*) violation of the Racketeering Influenced and

23  Corrupt Organizations Act ("RICO"); (*ii*) violation of section 10(b) of the Securities Exchange

24  Act of 1934 (the "Exchange Act") and SEC Rule 10b-5; (*iii*) forfeiture of bonuses and stock-

25  trading profits pursuant to section 304 of the Sarbanes-Oxley Act ("SOX"); (*iv*) violation of

26  section 13(b) of the Exchange Act and SEC Rules 13b2-1 and 13b2-2; (*v*) breach of the fiduciary

27  duty of care; (*vi*) breach of the fiduciary duty of loyalty in connection with self-dealing

28  transactions; (*vii*) breach of the fiduciary duty of loyalty and the obligation to act in good faith;

1   (*viii*) breach of the fiduciary duty of loyalty in connection with a failure of oversight; (*ix*) fraud

2   and deceit, in violation of sections 1709 and 1710 of the California Civil Code; (*x*) contribution;

3   (*xi*) unjust enrichment; (*xii*) breach of an employee's duty of undivided loyalty to an employer;

4   and (*xiii*) aiding and abetting breaches of fiduciary duty.

5        7.    This Complaint is based on Brocade's books and records and on information and

6   belief.

7        8.    The Complaint will first identify the parties and the bases for jurisdiction and

8   venue, and will summarize the background of the case and the underlying facts.  The Complaint

9   then will discuss the stock-option process at Brocade in greater detail, describing the various

10   plans under which stock options were granted and some of the categories of grants that Brocade

11   made.  The Complaint next will describe stock-option grants made by the "Committee of One"

12   (Greg Reyes, acting in his sole capacity), the Compensation Committee, and the Board of

13   Directors, with specific facts about particular faulted grants.  The Complaint then will discuss

14   faulted grants made to departing employees and to employees on leaves of absence.  Next will

15   come a discussion of the Finance Department's activities.

16        9.    The Complaint then will address certain information generally available to

17   Defendants about Brocade's stock-option policies and the accounting implications of not

18   following them and granting "in-the-money" options.  The next section will address each

19   Defendant individually, summarizing his or her involvement in the various activities previously

20   discussed, and alleging additional allegations specifically relating to his or her liability to

21   Brocade.  The Complaint then will address the harms that Brocade suffered as a result of

22   Defendants' misconduct and will lay out the causes of action asserted against the various

23   Defendants.

24                      **THE PARTIES**

25       10.    Plaintiff Brocade Communications Systems, Inc. was originally incorporated as a

26   California corporation in August 1995.  In 1999, the Company was reincorporated in Delaware

27   and made an initial public offering (the "IPO") of its shares.  Brocade is currently listed on the

28   NASDAQ Global Select Market.  Brocade employs almost 2,400 people worldwide and is the

1 │ leading supplier of storage area network equipment and a leading provider of data center

2 │ networking solutions that help enterprises connect and manage their information.

3 │        11.    Defendant Gregory L. Reyes was Brocade's Chief Executive Officer (the "CEO")

4 │ from July 1998 until January 2005.  From January 2005 until July 2005, Reyes was an advisor to

5 │ the Company.  Reyes served as Brocade's President from July 1998 until May 2001 and was the

6 │ Chairman of its Board of Directors from May 2001 until January 2005.  Reyes served as a

7 │ Brocade director from July 1998 through April 2005.  He was a Section 16 officer of the

8 │ Company from 1999 to early 2005.  Reyes was involved with and often solely responsible for

9 │ granting faulted stock options to employees, routinely approving grants as a Committee of One

10 │ for Brocade's Board.  As a Board member, Reyes was involved in stock-option grants to officers

11 │ and directors, including himself.  Reyes knew of the improper option-granting practices at

12 │ Brocade.  He also signed financial statements that later needed to be restated or corrected

13 │ because they had incorrectly reported Brocade's compensation-related expenses.  Reyes received

14 │ at least 13,272,133 faulted stock options.  He sold at least 14,591,023 shares of Brocade stock,

15 │ receiving gross sales proceeds of $581,295,038.  (All numbers of shares or options and all prices

16 │ in this Complaint have been adjusted, except in quoted materials or where otherwise noted, to

17 │ reflect three 2-for-1 stock splits effective December 3, 1999, March 15, 2000, and December 22,

18 │ 2000.)

19 │        12.    Defendant Stephanie Jensen was Brocade's Vice President of Human Resources

20 │ ("HR") from October 1999 until February 2004.  Jensen then served as a consultant to the

21 │ Company from February 2004 until August 2004.  As Vice President of HR, Jensen was

22 │ responsible for Brocade's compensation and benefits programs, including stock options.  Jensen

23 │ participated in and facilitated the granting of faulted stock options, including by altering

24 │ Brocade's records, and she knew of the improper option-granting practices at Brocade.  Jensen

25 │ received at least 1,129,901 faulted stock options.  She sold at least 564,242 shares of Brocade

26 │ stock, receiving gross sales proceeds of $24,604,671.  Before joining Brocade in October 1999,

27 │ Jensen had held other HR positions, including Senior Director of HR at Apple Computer,

28 │ Director of HR at Net Dynamics, and Senior Director of HR at Netscape.

1        13.     Defendant Michael J. Byrd was Brocade's Vice President and Chief Financial

2  Officer ("CFO") from May 1999 until May 2001. Byrd then served as Brocade's Chief

3  Operating Officer ("COO") and President from June 2001 to January 2003. Byrd was a

4  Section 16 officer of the Company from 1999 until 2002. As CFO and COO, Byrd was aware of

5  and participated in Brocade's faulted stock-option grant processes. Byrd also signed certain of

6  Brocade's financial statements that later needed to be corrected because they had inaccurately

7  reported Brocade's compensation-related expenses. Byrd received at least 4,531,268 faulted

8  stock options. He sold at least 1,651,480 shares of Brocade stock, receiving gross sales proceeds

9  of $96,631,676. Before joining Brocade in 1999, Byrd had served as CFO of Maxim Integrated

10  Products from February 1994 to April 1999 and had worked at the accounting firm of Ernst &

11  Young LLP – where he had been a partner – from 1982 to 1994.

12        14.     Defendant Antonio Canova was Brocade's Vice President, Finance from

13  November 2000 until November 2004, and Brocade's Vice President, Administration from

14  November 2004 to December 2005. Canova also served as Brocade's CFO from May 2001 until

15  December 2005. Canova was a Section 16 officer of the Company from 2001 until 2005. As

16  CFO and Vice President of Finance, Canova was involved in the granting of faulted stock

17  options and was aware of the improper option-granting practices at Brocade. He also had

18  responsibility to ensure that Brocade properly accounted for and reported its stock-option

19  expenses. Canova signed certain of Brocade's financial statements that later needed to be

20  restated because they had incorrectly reported Brocade's compensation-related expenses.

21  Canova received at least 1,441,506 faulted stock options. Canova sold at least 776,927 shares of

22  Brocade stock, receiving gross sales proceeds of $7,948,589. Before joining Brocade in

23  November 2000, Canova had served as Executive Vice President, CFO, and Secretary of

24  Wireless, Inc. from April to November 2000, and had worked at the accounting firm of KPMG –

25  where he had been an audit partner – from 1984 to 2000.

26        15.     Defendant Neal Dempsey served on Brocade's Board of Directors from at least

27  December 1996 through April 2007. Dempsey sat on the Board's Audit Committee from at least

28  February 26, 1998 through October 2004 and on the Compensation Committee from at least

SECOND AMENDED COMPLAINT

1  February 26, 1998 through at least February 2007.  As a member of the Board and the

2  Compensation Committee, Dempsey was involved in granting stock options to officers and

3  directors and in ratifying grants to employees, and he was aware of the improper option-granting

4  practices at Brocade.  Dempsey also signed certain of Brocade's financial statements that later

5  needed to be restated or corrected because they had incorrectly reported Brocade's

6  compensation-related expenses.  Dempsey received at least 155,000 faulted stock options.  He

7  sold at least 378,868 shares of Brocade stock, receiving gross sales proceeds of $21,045,719.

8  Dempsey has been a general partner of Bay Partners – a venture-capital firm – from 1989 to the

9  present.  He also has served on numerous boards of directors.

10       16.    Defendant Mark Leslie served on Brocade's Board of Directors from January

11  1999 until May 2002.  Leslie sat on the Audit Committee from June 2001 until May 2002.

12  Leslie was on the Compensation Committee from March 1999 until August 2001.  As a member

13  of the Board and the Compensation Committee, Leslie was involved in granting stock options to

14  officers and directors and in ratifying grants to employees, and he was aware of the improper

15  option-granting practices at Brocade.  Leslie also signed certain of Brocade's financial

16  statements that later needed to be restated or corrected because they had incorrectly reported

17  Brocade's compensation-related expenses.  Leslie received at least 60,000 faulted options.  He

18  sold at least 804,848 shares of Brocade stock, receiving gross sales proceeds of $37,793,225.

19  Leslie also served as the CEO of Veritas Software, Inc. from 1990 to November 2000, and he has

20  been a member of numerous boards of directors.

21       17.    Defendant Seth D. Neiman was one of Brocade's founders, and he served on the

22  Company's Board of Directors from August 1995 until April 2006.  Neiman sat on the

23  Compensation Committee from August 2001 until October 2004, and on the Audit Committee

24  from at least February 26, 1998 until October 2001.  In addition, Neiman served as Brocade's

25  CEO in 1995 and 1996.  As a member of the Board and the Compensation Committee, Neiman

26  was involved in granting stock options to officers and directors and in ratifying grants to

27  employees, and he was aware of the improper option-granting practices at Brocade.  Neiman also

28  signed certain of Brocade's financial statements that later needed to be restated or corrected

1   because they had incorrectly reported Brocade's compensation-related expenses.  Neiman

2   received at least 155,000 faulted options.  He sold at least 3,522,756 shares of Brocade stock,

3   receiving gross sales proceeds of $197,570,276.  Neiman has been a partner in Crosspoint

4   Venture Partners – a venture-capital firm – from 1994 to the present.  He also has served as a

5   director on numerous boards of directors.

6          18.     Defendant Paul R. Bonderson, Jr. was one of Brocade's founders.  From August

7   1995 until November 2001, Bonderson served as Brocade's Vice President of Engineering.

8   From November 2001 until January 2003, Bonderson was the Vice President of Strategic

9   Development.  Bonderson served as the Company's Chief Technology Officer and Chief

10   Engineer from April 2003 until his retirement in early 2005.  Bonderson was a Section 16 officer

11   from 1999 to 2001 and from 2003 to 2004.  Bonderson was involved in the granting and pricing

12   of employees' stock options and was aware of the improper option-granting practices at the

13   Company.  Bonderson received at least 1,486,446 faulted options.  He sold at least 4,838,640

14   shares of Brocade stock, receiving gross sales proceeds of $273,355,777.

15          19.     Defendant Robert D. Bossi was Brocade's Controller from May 1999 until June

16   2003.  As Controller, Bossi participated in administrative and reporting functions relating to

17   stock options.  Bossi was involved in preparing Brocade's financial statements that needed to be

18   restated or corrected.  He also was involved in various faulted grants of stock options and was

19   aware of the improper option-granting practices at Brocade.  Bossi received at least 415,498

20   faulted options.  He sold at least 233,974 shares of Brocade stock, receiving gross sales proceeds

21   of $12,918,118.  Before joining Brocade in 1999, Bossi had worked at two technology

22   companies in the 1990s, and at the accounting firm of Coopers & Lybrand for eight years in the

23   1980s as a financial reporting manager and/or revenue reporting manager.

24          20.     Defendant Jack Cuthbert joined Brocade in 1998 as Director Channel Sales.  He

25   served as Vice President, North American Sales in 1999, as Vice President, Worldwide Sales

26   from 2000 to 2003, and as Vice President, OEM sales from 2003 through 2004.  Cuthbert was a

27   Section 16 officer from 2000 until 2003.  Cuthbert was involved in Brocade's stock-option

28   grants and was aware of the improper option-granting practices at the Company.  Cuthbert

7