1  restatement."

2  83.  Brocade announced the results of the restatement on January 24, 2005. The
3  Company restated its financial statements for fiscal years 2002 and 2003 to correct the
4  accounting treatment for stock-based compensation, resulting in an overall reduction in net
5  income of approximately $304 million for years before 2002.

6  84.  Brocade used variable accounting for the restatement, because it concluded that
7  its historical books and records were not sufficiently reliable to permit the use of fixed
8  accounting to determine the compensation expense attributable to improperly granted stock
9  options.

10  85.  Brocade also announced on January 24, 2005 that Reyes would step down as
11  CEO.

12  86.  The First Investigation had focused only on options-granting activities before
13  August 2003, in part because the Audit Committee and its consultants believed that Brocade had
14  changed its options-granting policies at that time and that no further improprieties had occurred.

15  87.  In early March 2005, however, information emerged that "look-back" or
16  backdating practices had in fact been used after July 2003.

17  88.  Based on the new information, the Audit Committee and its consultants in May
18  2005 began another investigation of Brocade's options-granting practices (the "Second
19  Investigation").

20  89.  Brocade also announced on May 16, 2005 that it would restate its financial
21  statements for the fiscal years ending 2002 through 2004 to record additional charges for stock-
22  based compensation expense, because the new information showed (among other things) that
23  Brocade could not rely on the documentation used to support the recorded measurement dates for
24  stock options granted from August 2003 through November 2004.

25  90.  The Audit Committee completed the Second Investigation in November 2005,
26  concluding that Brocade had incorrectly accounted for stock-based compensation related to
27  (*i*) measurement dates for the period August 2003 through November 2004, (*ii*) employees on
28  leave of absence or in transitional roles before leaving the Company, primarily in fiscal years

1999 through 2001, and (*iii*) recorded dates for certain stock-option exercises.

91. The Audit Committee found that, between August 2003 and November 2004, HR personnel had selected grant dates and exercise prices based on the lowest price for the week of the grant, rather than as of the actual grant date. The Committee therefore concluded that the documentation for those grants was unreliable and that Brocade needed to increase its non-cash compensation expense for fiscal 2003 and 2004.

92. The Second Investigation also uncovered problems with Brocade's accounting for stock-based compensation for employees on leaves of absence and in advisory roles before leaving the Company.

93. On November 14, 2005, Brocade restated its financial statements for fiscal years ending 2002 through 2004 and made adjustments to its financial information for fiscal years 1999 through 2001, resulting in an increase in non-cash compensation expense totaling $72.3 million. The restatement included non-cash stock-based compensation charges of $900,000 for the process issues in fiscal years 2003 and 2004, $71 million for the leave-of-absence issues spanning fiscal years 1999 to 2004, and $400,000 for the exercise-date issues between fiscal years 1999 and 2002.

94. The evidence suggests that Brocade's stock-option and accounting problems derailed a merger that the Company was in the process of negotiating with Cisco Systems, Inc. Brocade and Cisco had been nearing agreement on a definitive merger agreement, pursuant to which (according to deposition testimony from Brocade executives) Cisco was going to pay $9.00 per share for Brocade's approximately 254.5 million outstanding shares of stock (not counting those held by insiders) – a premium of about $1.85 per share over the stock's market price at the time the deal was expected to close.

95. The Audit Committee's investigation and the ensuing events caused the deal to collapse. For example, on November 21, 2004, Andy Johnson e-mailed Reyes that Cisco "essentially want[s] to be able to walk from the deal if the internal investigation causes a restatement or other significant issue. Both sides have indicated this is a deal breaker if they can't get what they want." Reyes responded and agreed that Cisco's stance on the internal

investigation "is a deal killer." Similarly, on November 29, 2004, Reyes e-mailed Canova that: "If [the internal investigation] goes on until the end of December we can kiss the [Cisco] deal good bye!"

### Remedial Actions

96. As a result of the two Audit Committee investigations, the Board recommended and adopted remedial measures. On January 30, 2005, the Compensation Committee resolved to reprice options granted to Reyes on August 15, 2003 and December 10, 2003, changing the strike price to the average price of Brocade stock during the fourth quarter of fiscal 2003 and the first quarter of fiscal 2004, respectively. The strike price of the August 15, 2003 grant of 600,000 options thus was increased from $5.53 to $5.82, and strike price of the December 10, 2003 grant of 500,000 options was increased from $5.52 to $6.34.

97. The Compensation Committee also approved, ratified, and confirmed the options that Reyes had granted as a Committee of One (although it did not ratify the conduct underlying the grants), except for the new-hire grants made to Cudgma, Geruson, Taylor, Daheb, and Traut. In addition, the Compensation Committee reviewed and later adopted new options-granting practices that it deemed to be consistent with best practices in the industry.

### **Legal Proceedings and Investigations**

98. The events described above led to a barrage of legal proceedings and investigations involving Brocade and its current and former officers and directors, including (*i*) criminal prosecutions of Reyes and Jensen by the U.S. Department of Justice, (*ii*) an SEC investigation of Brocade, (*iii*) the SEC's civil-enforcement actions against Reyes, Jensen, Byrd, and Canova, (*iv*) federal- and state-court securities-law class actions, and (*v*) federal- and state-court shareholder derivative actions.

### Criminal Prosecutions and Convictions

99. The Department of Justice filed a criminal complaint against Reyes and Jensen on July 20, 2006, and the two were indicted on August 11, 2006.

100. On August 7, 2007, a jury in this Court convicted Reyes on ten counts of criminal activity: (*i*) criminal conspiracy, (*ii*) securities fraud, (*iii*) three counts of making false SEC

21
SECOND AMENDED COMPLAINT

1 filings through Brocade's Forms 10-K for the fiscal years ended October 27, 2001, October 26, 2002, and October 25, 2003, (*iv*) falsifying books, records, and accounts, (*v*) two counts of making false statements to an accountant in management representation letters for the fiscal years ended October 26, 2002, and October 25, 2003, and (*vi*) two counts of making false statements to an accountant in certifications filed with the Forms 10-K for those fiscal years.

101. On January 16, 2007, the Court sentenced Reyes to 21 months in prison and a $15 million fine. The sentence included four extra months that the Court added based on Reyes' having submitted a false declaration to the Court in connection with Jensen's motion to sever her trial from Reyes'. Reyes had sworn to the Court that the two trials should be severed because no options backdating had occurred and because he intended to testify in Jensen's favor at her trial. After the Court granted the severance motion, however, Reyes essentially conceded at his own trial that backdating had in fact occurred – and he did not testify at Jensen's trial.

102. In connection with Reyes' sentencing, Brocade asked the Court to order Reyes to pay restitution to the Company, including costs related to Brocade's internal investigations of the historical stock-option practices, the SEC investigation and settlement, and the defense of civil proceedings – totaling $37,570,939.76 – plus an additional $64,478,039 for defense costs the Company had advanced to directors, officers, and employees (mostly to Reyes) in connection with those matters. The Court denied Brocade's request, citing the Company's ability to seek recovery of those costs in the pending derivative litigation.

103. On December 5, 2007, Jensen was convicted of (*i*) conspiracy to falsify books, records, and accounts, in violation of 18 U.S.C. § 371, and (*ii*) falsifying books, records, and accounts, in violation of 15 U.S.C. §§ 78m(b)(2)(A), 78m(b)(5), and 78ff, and 17 C.F.R. § 240.13b2-1. The Court sentenced Jensen to a four-month prison term on March 19, 2008.

104. Brocade asked the Court to order Jensen to pay restitution for the same categories of damages the Company requested from Reyes. The total amount requested was $104,478,604.51, with $66,827,664.75 of that amount representing fees and expenses advanced to directors, officers, and employees. The Court denied Brocade's request.

1 SEC Investigation of Brocade

2  105.  In 2005, the SEC informed Brocade that it was conducting a formal investigation, captioned *In re the Matter of Brocade Communications Systems, Inc.*, File No. SF-02932, concerning Brocade's stock-option granting practices. Brocade cooperated with the SEC's Division of Enforcement and produced substantial numbers of documents.

 106.  Brocade began settlement discussions with the Staff of the Division of Enforcement and recorded $7 million for an estimated settlement expense for the fiscal quarter ended January 28, 2006. The SEC approved the settlement on May 31, 2007, and the Court entered a final judgment approving the settlement on August 27, 2007. Brocade paid the $7 million settlement amount on August 31, 2007.

SEC Civil Enforcement Actions Against Reyes, Jensen, Canova, and Byrd

 107.  The SEC currently is pursuing civil enforcement actions against Reyes, Jensen, Canova, and Byrd in this Court for violating the federal securities laws. The SEC brought the action against Reyes, Jensen, and Canova on July 20, 2006, and sued Byrd separately on August 17, 2007. The cases have now been consolidated and are proceeding.

Securities Class Actions

 108.  **Federal Securities Class Actions.** Beginning in May 2005, several federal securities class actions were filed in this Court against Brocade and certain of its then-current and former officers on behalf of shareholders who had purchased Brocade stock when the market price allegedly was inflated as a result of Brocade's false financial statements. The consolidated complaint asserted claims under §§ 10(b) and 20(a) of the Exchange Act and alleged that Brocade and the individual defendants had made false or misleading public statements about Brocade's business and operations. The Court denied Brocade's and certain other defendants' motions to dismiss.

 109.  On October 12, 2007, the Court certified a class of all purchasers of Brocade stock from May 18, 2000 through May 15, 2005, and partially granted the class plaintiffs' motion for partial summary judgment against Reyes, prohibiting him from relitigating the criminal jury's finding that he knowingly and willfully had made material misrepresentations in

Brocade's Forms 10-K for 2001, 2002 and 2003.

110. On May 13, 2008, the Court granted plaintiffs' motion for partial summary judgment that Reyes had been acting within the course and scope of his employment at Brocade when he signed Forms 10-K for fiscal years 2001 through 2003.

111. In light of the Court's rulings and other factors relating to the litigation, Brocade agreed on May 30, 2008 to settle the federal class action for $160 million.

112. **State Securities Class Action.** On October 23, 2007, a putative class-action complaint captioned *Huang v. Reyes* was filed against Brocade and certain of its current and former officers and directors in the California Superior Court, Santa Clara County, on behalf of persons who owned Brocade stock between February 21, 2001 and May 16, 2005. The complaint (which actually appears to be a disguised derivative action) alleges that Brocade and the individual defendants breached their duty of disclosure by failing to disclose the conduct at issue in the federal securities litigation. The case is currently being litigated.

### Shareholder Derivative Actions

113. Beginning in May 2005, several putative shareholder derivative actions were filed in the California Superior Court, Santa Clara County, alleging claims for breach of fiduciary duty and various other state-law claims against certain of Brocade's current and former officers and directors based largely on the same factual allegations underlying the federal class actions. The cases were assigned to the Honorable Jack Komar, in the court's Complex Litigation Department, and were consolidated as *In re Brocade Communications Systems Derivative Litigation*, No. 1:05CV041683.

114. Beginning in June 2005, several additional putative shareholder derivative actions were filed in this Court alleging claims similar to those asserted in the state-court derivative suits, as well as a federal claim under § 20(a) of the Exchange Act. The Court related the federal derivative actions to the pending securities class actions and consolidated the derivative actions under the caption *In re Brocade Communications Systems, Inc. Derivative Litigation*, No. C05-02233 CRB.

115. On January 6, 2006, the Court dismissed the consolidated federal derivative

actions based on the plaintiffs' failure to plead with sufficient particularity why a pre-suit demand on Brocade's Board would have been futile. The federal plaintiffs then made a demand on the Board on January 13, 2006.

116. In response to the federal plaintiffs' demand, Brocade entered into settlement discussions with the plaintiffs, and the parties reached an agreement to settle the federal derivative actions. The Court preliminarily approved the proposed settlement on February 14, 2007, but declined to grant final approval at the fairness hearing on April 27, 2007, after the federal plaintiffs expressed their unwillingness to proceed with the settlement in light of the confirmatory discovery they had undertaken.

117. The parties then engaged in certain motion practice in the consolidated state-court derivative action, although – pursuant to the parties' agreement – the state court deferred ruling on most of the pending motions. The parties also participated in mediation sessions with Judge Komar on September 27, 2007, November 14, 2007, and February 8, 2008, but were unable to reach a settlement.

118. Another federal putative shareholder derivative action – *Barbour v. Reyes*, No. 08-02029 CRB – was filed in this Court on April 15, 2008. The case has been related to, but not consolidated with, the consolidated federal derivative action.

119. **Section 16(b) Action.** Yet another putative shareholder derivative action, captioned *Roth v. Reyes*, was filed in this Court on April 24, 2006 against Brocade (as a nominal defendant) and four former officers, including Reyes, Byrd, Canova, and Cuthbert, alleging violations of § 16(b) of the Exchange Act and seeking to recover "short-swing" trading profits. The Court dismissed the action on August 27, 2007. Plaintiff has appealed the dismissal to the Ninth Circuit.

Appointment of SLC

120. On February 22, 2008, after settlement efforts in the federal and state derivative actions had stalled, Brocade's Board of Directors appointed the SLC to handle all matters relating to the derivative litigation. The Board delegated to the SLC "plenary authority to decide whether it is in the best interests of the Company and its shareholders to pursue or otherwise