1
2
3
4
5
6
7
8                    IN THE UNITED STATES DISTRICT COURT
9              FOR THE NORTHERN DISTRICT OF CALIFORNIA
10
11   IN RE BROCADE COMMUNICATIONS          No. C 05-02233 CRB
     SYSTEMS, INC. DERIVATIVE
12   LITIGATION                            **ORDER ON MOTIONS TO DISMISS**
13
     This document relates to
14
                ALL ACTIONS
15
16   _____/
17
18   I.    Introduction
19          This matter began as a shareholders' derivative action brought on behalf of Brocade
20   Communications Systems, Inc. ("Brocade" or the "Company") against certain of its former
21   officers and directors.  Defendants were allegedly involved in a scheme to manipulate stock
22   option grant dates so as to maximize profits to themselves at the expense of the Company.
23   The original shareholder plaintiffs asserted violations of state law, including breaches of
24   fiduciary duties and unjust enrichment.  See Verified Derivative Complaint ¶ 1 ("VDC");
25   Docket Entry ("Dkt.") 1.  The Court dismissed the original complaint with leave to amend
26   because no demand was made on the Company.  See Dkt. 79.  After prolonged negotiations,
27   the Company formed a Special Litigation Committee ("SLC"), which decided to take over
28   litigation and pursue this matter on Brocade's behalf.  On August 1, 2008, Brocade filed a
     Second Amended Complaint ("SAC").  See Dkt. 220.  The SAC named as defendants

**United States District Court**
For the Northern District of California

individuals who were not previously part of the derivative action and asserted additional claims under federal securities law.

Presently before the Court are motions to dismiss filed by all Defendants. The Court conducted a hearing on December 5, 2008. At that hearing the Court assured the parties that it would issue an order the following week. As promised, on December 12, 2008, the Court issued a memorandum order, granting in part and denying in part Defendants' Motions to Dismiss. <u>See</u> Dec. 12, 2008 Order, Dkt. 375. The instant opinion provides the full rationale upon which that order was based.

II.     <u>Background</u>

    A.     <u>Factual Allegations</u>

In the Second Amended Complaint, Brocade alleges the following:

        1.     <u>The Parties</u>

Plaintiff Brocade was originally incorporated in California in 1995, and later reincorporated in Delaware in 1999. SAC ¶ 10. The Company is a supplier of storage area network equipment and provides data center networking solutions. <u>Id.</u>

Defendant Gregory L. Reyes was Brocade's Chief Executive Officer ("CEO") from July 1998 until January 2005, and served on the Board of Directors from July 1998 through April 2005. SAC ¶ 11. Reyes devised a scheme whereby he granted faulted stock options to employees, routinely approving grants as a "committee of one" for Brocade's Board. <u>Id.</u> As a Board member, Reyes was involved in stock-option grants to officers and directors, including himself. <u>Id.</u> Reyes also signed financial statements that later needed to be restated because they incorrectly reported Brocade's compensation-related expenses. <u>Id.</u>

Defendant Stephanie Jensen served as Brocade's Vice President of Human Resources ("HR") from October 1999 until February 2004. SAC ¶ 12. Jensen was responsible for Brocade's compensation and benefits programs, including stock options. Jensen knowingly participated in the granting of faulted stock options and altered Brocade's records. <u>Id.</u> Jensen herself received a large number of faulted stock options. <u>Id.</u>

United States District Court
For the Northern District of California

1    Defendant Michael J. Byrd was Brocade's Vice President and Chief Financial Officer

2 ("CFO") from May 1999 until May 2001.  SAC ¶ 13.  Byrd then served as Brocade's Chief

3 Operating Officer ("COO") and President from June 2001 until June 2003.  Id.  Byrd

4 knowingly participated in the faulted stock-option grant process, signed inaccurate financial

5 statements, and received faulted options.  Id.

6    Defendant Antonio Canova was Brocade's Vice President of Finance from November

7 2000 until November 2004, Vice President of Administration from November 2004 until

8 December 2005, and CFO from May 2001 until December 2005.  SAC ¶ 14.  Canova was

9 aware of and involved in the granting of faulted stock options.  Id.  Canova signed inaccurate

10 financial statements and received faulted options.  Id.

11    Defendant Neal Dempsey was on Brocade's Board of Directors from December 1996

12 until April 2007.  SAC ¶ 15.  Dempsey was a member of the Board's Audit Committee from

13 February 1998 through October 2004, and on the Compensation Committee from February

14 1998 through February 2007.  Id.

15    Defendant Mark Leslie served on Brocade's Board from January 1999 until May

16 2002.  SAC ¶ 16.  Leslie was a member of the Audit Committee from June 2001 until May

17 2002 and a member of the Compensation Committee from March 1999 until August 2001.

18 Id.

19    Defendant Seth D. Neiman was one of Brocade's founders and served on the Board of

20 Directors from August 1995 until April 2006.  SAC ¶ 17.  Neiman served on the Audit

21 Committee from February 1998 until October 2001, and on the Compensation Committee

22 from August 2001 until October 2004.  Id.

23    As members of the Compensation Committee, Defendants Dempsey, Leslie, and

24 Neiman were involved in granting stock options to officers and directors and in ratifying

25 grants to employees.  SAC ¶¶ 15-17.  All were aware of the improper option-granting

26 practices at Brocade and signed inaccurate financial statements.  Id.  These Defendants also

27 received faulted options.  Id.

28

United States District Court
For the Northern District of California

1    Defendant Paul R. Bonderson, Jr. was one of Brocade's founders.  SAC ¶ 18.

2  Bonderson served as Brocade's Vice President of Engineering from August 1995 until

3  November 2001, as Vice President of Strategic Development from November 2001 until

4  January 2003, and as Chief Technology Officer and Chief Engineer from April 2003 until

5  early 2005.  Id.  Bonderson was involved in the granting and pricing of stock options and was

6  aware of the Company's improper practices.  Id.  He also received faulted options.  Id.

7    Defendant Robert D. Bossi was Brocade's Controller from May 1999 until June 2003.

8  SAC ¶ 19.  Bossi participated in administrative and reporting functions in connection with

9  the improper grant of stock options.  Id.  Bossi received faulted options.  Id.

10    Defendant Jack Cuthbert served Brocade as an executive specializing in sales from

11  1998 until 2004.  SAC ¶ 20.  Cuthbert was aware of the improper practices at the Company

12  and received faulted options.  Id.

13    2.    The Backdating Scheme

14    Facing an increasingly competitive market for the top technological talent, Brocade

15  used stock options as a form of compensation in order to attract high-caliber employees.

16  SAC ¶ 33.  Reyes, in concert with Jensen, routinely provided extra compensation to

17  employees (including themselves) that were backdated to coincide with low closing prices of

18  Brocade's stock.  SAC ¶ 58.  This practice was contrary to the Company's stock-option

19  plans, which required it to grant stock options with exercise prices based on the stock's fair

20  market value on the actual grant date.  SAC ¶ 56.  Defendants knew that they were not

21  adhering to the option plans, SAC ¶ 57, and actively manipulated the timing and exercise of

22  stock-option grants, SAC ¶ 58.  Defendants falsified the dates of stock-option grants, forged

23  records relating to Board proceedings, and created sham programs to lower the exercise

24  prices of stock-option grants or to change the vesting periods.  SAC ¶ 59.  Defendants sought

25  to avoid recording the compensation expenses on the Company's financial statements.  SAC

26  ¶¶ 54, 57, 58.

27    To implement this scheme, Reyes abused the authority purportedly given to him to

28  grant stock options as a "committee of one."  SAC ¶ 60.  Reyes granted in-the-money options

United States District Court
For the Northern District of California

1    based on falsified documentation suggesting that the options has been granted on an earlier

2    date, when the stock's market price was lower.  Id.  At the direction of Reyes, Jensen

3    prepared documentation of backdated options.  SAC ¶¶ 61-63.

4        Other Defendants knew about and participated in this practice in various ways.  SAC

5    ¶ 65.  The Compensation Committee purported to have held a meeting approving the

6    issuance of options to eight executives, but such a meeting never occurred.  SAC ¶ 67.  Byrd

7    implemented a program permitting new hires to select their own grant date for stock options,

8    in contravention of the plans' terms.  SAC ¶ 68.  Byrd also created a "part-time" program

9    that created artificial start dates for new employees.  SAC ¶ 69.

10       In total, the backdating practices led Brocade to issue tens of millions of faulted stock

11   options that were mispriced under the Company's policies.  SAC ¶ 70.  Defendants' conduct

12   caused the Company to materially misstate its equity option compensation expenses between

13   2000 and 2004, requiring Brocade twice to restate its public financial statement.  SAC ¶ 54.

14   Defendants hid these practices from auditors.  SAC ¶ 71.  The scheme allowed Brocade to

15   retain key employees while falsely inflating the quality of Brocade's financial performance.

16   SAC ¶ 74.  The value of the stock options that Defendants received was enhanced, allowing

17   Defendants to enrich themselves at the expense of the Company.  SAC ¶ 75.

18           3.    Discovery of Accounting Problems

19       In October 2004, Daniel Cudgma, a former employee, sent the Company a draft civil

20   complaint that he intended to file.  SAC ¶ 77.  Cudgma had received backdated options under

21   Brocade's "part-time" program when he joined the Company.  Id.  The Board's Audit

22   Committee began an investigation on November 1, 2004 into the alleged improprieties.  SAC

23   ¶ 78.

24       On January 6, 2005, Brocade announced that it intended to restate certain of its

25   financial statements to record additional stock-based compensation expenses.  SAC ¶ 82.  On

26   January 24, 2005, the Company restated its financial statements for 2002 and 2003.  SAC ¶

27   83.  At that point, Reyes stepped down as CEO.  SAC ¶ 85.  On May 16, 2005, Brocade

28   announced that it would again restate its financial statements for 2002 through 2004 to record

United States District Court
For the Northern District of California

additional charges for stock-based compensation expenses.  SAC ¶ 89.  The second

restatement occurred on November 14, 2005.  SAC ¶ 93.  As a result of the Audit Committee

investigations, the Board adopted remedial measures changing the strike price on the faulted

options.  SAC ¶ 96.

The backdating scheme led to a panoply of legal proceedings.  The United States

Department of Justice brought criminal charges against Reyes and Jensen.  In 2007, Reyes

was convicted of ten counts related to securities fraud, and Jensen was convicted of two

criminal counts.  The SEC conducted a formal investigation of Brocade, which resulted in a

settlement of $7 million.  The SEC is also currently pursuing civil enforcement actions

against Reyes, Jensen, Canova, and Byrd.  A federal securities class action was filed in this

Court against Brocade and its former officers on behalf of shareholders.  On November 18,

2008, the Court granted preliminary approval of a settlement in that action in the amount of

$160 million.  A state securities class action is currently pending in California Superior

Court.

B.     Procedural Background

In May 2005, several shareholder derivative actions were filed on behalf of Brocade

in California Superior Court, alleging claims for breach of fiduciary duty and state law fraud.

Pursuant to the parties' agreement, the state court has stayed proceedings pending the

outcome of this litigation.

Beginning in June 2005, several additional shareholder derivative actions were filed in

this Court, alleging breach of fiduciary duty claims and violation of § 20(a) of the Exchange

Act.  See, e.g., Dkt. 1.  The cases were consolidated into the instant matter.  See Dkt. 31.

On January 6, 2006, the Court dismissed the derivative action with leave to amend

because the plaintiffs failed to demonstrate the futility of a pre-suit demand on Brocade's

Board.  See Dkt. 79.  A formal demand was made on January 13, 2006.  SAC ¶ 115.

Brocade then entered into settlement discussions with the plaintiffs.  SAC ¶ 116.  The Court

granted preliminary approval of the proposed settlement in February 2007.  See Dkt. 126.

United States District Court
For the Northern District of California

The fairness hearing originally scheduled for April 27, 2007 was subject to multiple continuances as negotiations continued between the parties.  See Dkt. 147, 158, 164, 180.

On February 22, 2008, after settlement efforts stalled, Brocade's Board appointed the SLC to handle all matters relating to the derivative litigation.  SAC ¶ 120.  The SLC has full authority to pursue and resolve all claims relating to the backdating scheme.  Id.  The SLC determined it was independent and not under the influence of the alleged wrongdoers in pursuing this action on behalf of the Company.  SAC ¶ 122.  The SLC retained separate counsel and undertook its own investigation of these claims.  SAC ¶¶ 121, 125-27.  On June 18, 2008, the Court instructed the SLC to file its amended complaint.  See Dkt. 216.  The Second Amended Complaint was filed on August 1, 2008, see Dkt. 220, and on August 27, 2008, the Court realigned Brocade as the sole party-plaintiff in the current action, see Dkt. 251.

The Second Amended Complaint asserts thirteen causes of action against the ten Defendants.  They are:

- (1) violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO") § 1962(c) against Reyes, SAC ¶¶ 1317-30;

- (2) violation of § 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5 against Reyes, Jensen, Byrd, Canova, Dempsey, Leslie, and Neiman, SAC ¶¶ 1331-45;

- (3) violation of § 304 of the Sarbanes-Oxley Act ("SOX § 304") against Reyes and Canova, SAC ¶¶ 1346-58;

- (4) violation of § 13(b) of the Securities Exchange Act of 1934 and SEC Rules 13b2-1 and 13b2-2 against Reyes and Canova, SAC ¶¶ 1359-71;

- (5) breach of the fiduciary duty of care against Reyes, Jensen, Byrd, Canova, Dempsey, Leslie, Neiman, and Bossi, SAC ¶¶ 1372-83;

- (6) breach of the fiduciary duty of loyalty through self-dealing against Reyes, Jensen, Canova, Dempsey, Neiman, Bonderson, Bossi, and Cuthbert, SAC ¶ 1384-92;

- • (7) breach of the fiduciary duty of loyalty through lack of good faith against all Defendants, SAC ¶¶ 1393-1402;

- • (8) breach of the fiduciary duty of loyalty through failure of oversight against Reyes, Jensen, Byrd, Canova, Dempsey, Leslie, Neiman, and Bossi, SAC ¶¶ 1403-13;

- • (9) violation of §§ 1709 and 1710 of the California Civil Code against Reyes, Jensen, Byrd, Canova, Dempsey, Leslie, and Neiman, SAC ¶¶ 1414-20;

- • (10) contribution from Reyes, Byrd, Canova, Dempsey, Leslie, and Neiman, SAC ¶¶ 1421-26;

- • (11) unjust enrichment against Reyes, Jensen, Canova, Dempsey, Neiman, Bonderson, Bossi, and Cuthbert, SAC ¶¶ 1427-44;

- • (12) breach of an employee's duty of undivided loyalty to his employer against Jensen and Bossi, SAC ¶¶ 1445-52; and

- • (13) aiding and abetting a breach of fiduciary duty against Jensen and Bossi, SAC ¶¶ 1453-59.

On October 1, 2008, pursuant to the parties' stipulation, the Court dismissed the claims for self-dealing (sixth cause of action) and unjust enrichment (eleventh cause of action) against Defendants Dempsey and Neiman.  Dkt. 284.

In the subsequent months, all Defendants filed motions to dismiss, which are subject to the instant order.

III.    Legal Standards

    A.    Rule 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed against a defendant for failure to state a claim upon which relief can be granted against that defendant.  Dismissal may be based on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  For purposes of evaluating a motion to

United States District Court
For the Northern District of California

1   dismiss, the Court "must presume all factual allegations of the complaint to be true and draw

2   all reasonable inferences in favor of the nonmoving party." Usher v. City of Los Angeles,

3   828 F.2d 556, 561 (9th Cir. 1987). Any existing ambiguities must be resolved in favor of the

4   pleading party. Walling v. Beverly Enters., 476 F.2d 393, 395-96 (9th Cir. 1973).

5   Mere conclusions couched in factual allegations are not sufficient to state a cause of

6   action. Papasan v. Allain, 478 U.S. 265, 286 (1986); see also McGlinchy v. Shell Chem.

7   Co., 845 F.2d 802, 810 (9th Cir. 1988). The complaint must plead "enough facts to state a

8   claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, __,

9   127 S. Ct. 1955, 1974 (2007). Courts may dismiss a case without leave to amend if the

10  plaintiff is unable to cure the defect by amendment. Lopez v. Smith, 203 F.3d 1122, 1129

11  (9th Cir. 2000).

12          B.    Requirements for Claims Under the Exchange Act

13  Claims brought under § 10(b) of the Exchange Act and Rule 10b-5 must meet the

14  particularity requirements of Federal Rule of Civil Procedure 9(b), which requires that "[i]n

15  alleging fraud or mistake, a party must state with particularity the circumstances constituting

16  fraud or mistake." Fed. R. Civ. P. 9(b); see also In re Daou Sys., Inc. Sec. Litig., 411 F.3d

17  1006, 1014 (9th Cir. 2005).

18  Moreover, these claims must also meet the stringent pleading standards of the Private

19  Securities Litigation Reform Act ("PSLRA") of 1995. See 15 U.S.C. § 78u-4. The PSLRA

20  amends the Exchange Act to require that a private securities fraud litigation complaint plead

21  with particularity both falsity and scienter. See id. §§ 78u-4(b)(1)-(2); Daou, 411 F.3d at

22  1014. Specifically, a complaint alleging securities fraud must "specify each statement

23  alleged to have been misleading, the reason or reasons why the statement is misleading, and,

24  if an allegation regarding the statement or omission is made on information and belief, the

25  complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. §

26  78u-4(b)(1); In re Vantive Corp. Sec. Litig., 283 F.3d 1079, 1084-85 (9th Cir. 2002). The

27  plaintiff must also "state with particularity facts giving rise to a strong inference that the

28

1   defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2); <u>Daou</u>, 411 F.3d at

2   1014.

3

4   IV.    Timeliness of Brocade's Claims

5       The issue of timeliness features prominently in Defendants' motions to dismiss.  If the

6   expiration of the applicable statute of limitations is apparent from the face of the complaint,

7   the defendant may raise a statute of limitations defense in a Rule 12(b)(6) motion to dismiss.

8   <u>Jablon v. Dean Witter & Co.</u>, 614 F.2d 677, 682 (9th Cir. 1980). This is true even though

9   expiration of the limitations period is an affirmative defense because Federal Rule of Civil

10  Procedure 9(f) "makes averments of time and place material for the purposes of testing the

11  sufficiency of a complaint."  <u>Suckow Borax Mines Consol. v. Borax Consol.</u>, 185 F.2d 196,

12  204 (9th Cir. 1950).  The parties set forth various arguments as to why Brocade may not

13  assert certain claims against them due to the expiration of the applicable period of

14  limitations.  Many of these arguments have merit; others do not.

15      Brocade's claims fall into three general categories: the federal § 10(b) claim, the

16  California state law claims, and the Delaware state law claims.

17      A.    Limitation Period Applicable to § 10(b) Claim

18      Under the Sarbanes-Oxley Act of 2002, the statute of limitations for a claim brought

19  under § 10(b) is two years from the discovery of facts constituting the violation but no more

20  than five years from the date of the violation.  28 U.S.C. § 1658(b).  The five-year outer

21  limitations period in a § 10(b) claim serves as a statute of repose.  <u>In re Maxim Integrated

22  Prods., Inc., Deriv. Litig.</u>, 574 F. Supp. 2d 1046, 1071 (N.D. Cal. 2008).  The two-year

23  statute of limitations period begins to run on one of the following two dates: (1) the date the

24  corporation had actual notice that the representation was false; or (2) the date the corporation,

25  with some form of reasonable diligence, would have been placed on inquiry notice.  <u>See

26  Livid Holdings Ltd. v. Salomon Smith Barney, Inc.</u>, 416 F.3d 940, 951 (9th Cir. 2005).  The

27  five-year statute of repose period may not be tolled and it begins to run on the date of the

28  false representation.  <u>Maxim</u>, 574 F. Supp. 2d at 1071.  "Each false representation may

United States District Court
For the Northern District of California

1  constitute a separate violation of § 10(b); the five-year period begins to run with respect to

2  each violation when it occurs."  Id.  "There can be no recovery for reliance on

3  representations made prior to the five-year statute of limitations period under a theory of

4  continuing wrong."  Id.

5       As a threshold matter, the Court rejects Defendants' contention that accrual on the

6  fraud claims began at the point of their wrongful conduct, on the theory that Defendants'

7  knowledge should be imputed to Brocade.  See id. (company could not have discovered fraud

8  from its directors and officers as they were the ones that concealed the wrongdoing).  If

9  Defendants' theory were accepted, it would create absurd results in that companies would be

10  limited in their ability to seek relief from the fraudulent misdeeds of their officers and

11  directors, even though others within the company or the shareholders were reasonably

12  unaware of what was occurring.  Regardless of the fact that the Company realized some

13  benefit in recruiting and retention of employees from the backdating scheme, Defendants

14  enjoyed ill-gotten gains while injuring the Company's reputation and subjecting it to

15  protracted litigation.

16       As Defendants' individualized knowledge will not be imputed to the Company, the

17  point at which the two-year period of limitations began to run was October 2004, when

18  Brocade had inquiry notice of the conduct giving rise to these claims.  The statute of repose

19  applies to limit the federal fraud action to conduct occurring after June 1, 2000, five years

20  before the filing of the original federal complaint.

21       B.     Limitation Periods Applicable to California State Law Claims

22       The statute of limitations for the California statutory claim for fraud and deceit is

23  three years, and it begins to run upon discovery of the facts constituting the fraud.  Cal. Code

24  Civ. P. § 338(d).  The Company discovered the fraud in October 2004, so Plaintiff had until

25  October 2007 to bring claims under §§ 1709 and 1710.

26       Brocade also asserts claims against Defendants Jensen and Bossi for (1) breach of an

27  employee's duty of loyalty; and (2) aiding and abetting a breach of fiduciary duty.  The

28  parties dispute whether these claims are subject to California or Delaware law.  Courts in

California apply the "internal affairs" doctrine, so that the laws of the state of incorporation generally govern causes of action that implicate a company's internal affairs.  See In re Verisign, Inc., Deriv. Litig., 531 F. Supp. 2d 1173, 1214-15 (N.D. Cal. 2007); Cal. Corp. Code § 2116 (codifying the internal affairs doctrine for claims brought against "directors"). The Court is not convinced, however, that the internal affairs doctrine mandates that Delaware law apply to tort claims brought against individuals who are not fiduciaries of a plaintiff employer.  See, e.g., Solow v. Stone, 994 F. Supp. 173, 177 (S.D.N.Y. 1998) (declining to apply internal affairs doctrine to aiding and abetting fiduciary claim).  The Court thus holds that California law governs these claims.  See Tucci v. Club Mediterranee, S.A., 89 Cal. App. 4th 180, 189 (2001) (California courts will apply California law unless a party demonstrates a true and material conflict with a foreign law, and the foreign state has a greater interest in having its law applied).

The parties dispute whether these claims are subject to a three or four-year limitation period.  Under California law, courts must consider the "gravamen" of a claim and the nature of the right sued on to determine the applicable statute of limitations.  See Marin Healthcare Dist. v. Sutter Health, 103 Cal. App. 4th 861, 874-75 (2002).

Brocade argues that these claims are most analogous to a breach of fiduciary duty claim, and therefore California's four-year statute of limitations for fiduciary duty claims should apply.  See Cal. Code Civ. P. § 343.  The discovery rule applies to this standard, so that the four-year period "begins to run when plaintiffs discovered, or in the exercise of reasonable diligence could have discovered, that facts had been concealed."  Stalberg v. W. Title Ins. Co., 230 Cal. App. 3d 1223, 1230 (1991).  Defendants argue that the gravamen of Plaintiff's claims sound in fraud because much of the SAC makes allegations related to Defendants' fraudulent conduct.  California applies a three-year statute of limitations for fraud claims.  Cal. Code Civ. P. § 338(d).

The Court finds that Plaintiff's claims for breach of an employee's duty of loyalty and aiding and abetting a breach of fiduciary duty are most akin to a breach of fiduciary duty claim.  California courts have defined the elements of these claims as analogous to a claim

**United States District Court**
For the Northern District of California

1  for breach of fiduciary duty.  See Huong Que, Inc. v. Luu, 150 Cal. App. 4th 400, 410

2  (2007); see also James v. Childtime Childcare, Inc., 2007 WL 1589543, at *3 (E.D. Cal. June

3  1, 2007) ("The Ninth Circuit has described [an employee's] duty of loyalty as a 'fiduciary-

4  like' duty.").  The allegations in the SAC do premise these claims on some of the same

5  misconduct asserted to support the fraud claims, but that conduct may also support a finding

6  that Defendants assisted others in breaching their fiduciary duties.  The two claims are not

7  mutually exclusive.  Accordingly, these claims are timely because California's four-year

8  statute of limitations for breach of fiduciary claims applies.

9          C.      Limitation Period Applicable to Delaware State Law Claims

10          Claims five through eight of the SAC allege breaches of fiduciary duty under

11  Delaware law.  Delaware applies a three-year statute of limitations to these claims.  10 Del.

12  Code § 8106(a).  Courts have applied that same period to equitable claims by analogy, Ryan

13  v. Gifford, 918 A.2d 341, 359 (Del. Ch. 2007), so the unjust enrichment claim is also

14  governed by a three-year limitations period.  The statute "begins to run at the time that the

15  cause of action accrues, which is generally when there has been a harmful act by a

16  defendant."  In re Tyson Foods, Inc. Consol. S'holder Litig., 919 A.2d 563, 584 (Del. Ch.

17  2007).  "This is true even if the plaintiff is unaware of the cause of action or the harm."  Id.

18          The period may be tolled, however, if the plaintiff alleges fraudulent concealment.  Id.

19  at 585; Verisign, 531 F. Supp. 2d at 1215.  For tolling to apply, a plaintiff must allege that

20  "the facts were so hidden that a reasonable plaintiff could not have made timely discovery of

21  an injury necessary to file a complaint."  Id. (internal quotations marks omitted).  Tolling

22  extends until the plaintiff is on inquiry notice of his injury.  Id.  The period may also be tolled

23  when a plaintiff has reasonably relied on the competence and good faith of a fiduciary.

24  Tyson, 919 A.2d at 585.

25          Here, the cause of action accrued in October 2004, at the point Brocade was on

26  inquiry notice of Defendants' misconduct.  Brocade has sufficiently pled that Defendants'

27  collective misdeeds were concealed so that it was not on notice of the alleged fiduciary

28

1   breaches until October 2004.  Accordingly, the breach of fiduciary claims based on Delaware

2   law were timely if asserted by October 2007.

3           D.        Application of Limitation Periods

4           The original state court action was filed in May 2005, naming Reyes, Canova,

5   Dempsey, Neiman, Byrd, Leslie, and Bonderson as defendants.  Cuthbert and Jensen were

6   added as defendants in the state court action on July 6 and November 13, 2006, respectively.

7   The original derivative complaint in this federal court action was filed on June 1, 2005,

8   naming Reyes, Canova, Dempsey, and Neiman as defendants.  Bossi did not appear as a

9   defendant in any action, federal or state, until the SAC was filed on August 1, 2008.

10  Accordingly, six of the ten Defendants (Jensen, Byrd, Leslie, Bonderson, Cuthbert, and

11  Bossi) were not named in this federal action until August 1, 2008, over three years after both

12  Brocade and public shareholders were put on notice of the alleged improprieties.

13          As there are different considerations at play for the original and new federal

14  Defendants, each group is discussed in turn.

15                  1.        Four Original Federal Defendants

16          Defendants Reyes, Canova, Dempsey, and Neiman were among the parties named in

17  the original federal court complaint filed in June 2005, less than a year after Brocade had

18  inquiry notice of Defendants' alleged misconduct.  Defendants point out, however, that the

19  original complaint did not include a claim alleging securities fraud.  They argue that the

20  fraud claims cannot be sustained because they were filed in August 2008, after § 10(b)'s two-

21  year statute of limitations and California's three-year statute of limitations had expired.

22                          a.        Rule 15 Relation Back

23          Under Federal Rule of Civil Procedure 15(c)(1)(B), an amendment to a pleading

24  relates back to the date of the original pleading when "the amendment asserts a claim or

25  defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be

26  set out – in the original pleading."

27          A threshold question is whether the SAC is an amendment or an entirely separate

28  filing.  Defendants argue that the SAC is a second, separate filing, and therefore cannot

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1  "relate back" to the first federal complaint.  The Ninth Circuit has held that a second,

2  separate complaint cannot "relate back" to the first complaint when the second complaint is

3  not an amendment, but rather a separate filing.  O'Donnell v. Vencor Inc., 466 F.3d 1104,

4  1111 (9th Cir. 2006) (per curiam) (holding second complaint is separate filing after first

5  complaint was dismissed for failure to prosecute).

6          This SAC, however, is not construed as a second filing but rather as a continuation of

7  the original federal court action.  On January 6, 2006, the original complaint was dismissed

8  with leave to amend, due to lack of demand.  Since then, Brocade decided to take on the

9  action and formed an SLC to investigate the claims.  The SAC is a result of its work.  The

10  parties have been actively engaged in litigating this matter since the original complaint was

11  filed.  If Brocade had decided not to pursue the derivative action, the original plaintiffs

12  certainly would have been able to amend their complaint.  There is no reason why, now that

13  Brocade has opted to take on this litigation and has been realigned as the sole party-plaintiff,

14  it should be deprived of the same opportunity.  See Telxon Corp. v. Bogomolny, 792 A.2d

15  964, 973 (Del. Ch. 2001) (holding, under Delaware's analog to Rule 15, that company's

16  amended complaint related back to the original derivative complaint).  "It would create an

17  unwarranted interference with the inherent power of boards of directors and lead to

18  anomalous results if this court were to conclude that a timely filed derivative claim was time

19  barred in the hands of a board of directors choosing to realign its interest to assert control of

20  the litigation."  Id.; see also In re Zoran Corp. Deriv. Litig., 511 F. Supp. 2d 986, 1011 (N.D.

21  Cal. 2007) ("In a derivative action . . . the true plaintiff is the corporation; the shareholders

22  bringing the action merely stand in the corporation's shoes.").  Accordingly, relation back

23  principles apply because the SAC flows from a preserved and timely original derivative

24  complaint.[1]

25          Whenever the claim asserted in the amended pleading arose out of the conduct,

26  transaction, or occurrence set forth in the original pleading, the amendment may relate back

27  _____

28          [1]       This same principle does not apply to the state court complaint, however.  This
complaint cannot "relate back" to the state court action, as it is clearly a separately filed claim
from this federal action.

to the date of the original pleading.  Fed. R. Civ. P. 15(c)(1)(B).  "[T]he relation back doctrine of Rule 15(c) is to be liberally applied."  Clipper Exxpress v. Rocky Mtn. Motor Tariff Bureau, Inc., 690 F.2d 1240, 1260 n.29 (9th Cir. 1982).

Here, the transactions that served as the basis for the original claims are the same transactions that are at the heart of the SAC.  The original complaint was based on stock option grants made from 1999 through 2004 to new hires, to members of the "part-time" program, and to employees on leaves of absence.  See VDC ¶¶ 66, 67, 74.  These are the same facts that are at the center of the SAC, even though the SAC focuses on misstatements made in internal documents as opposed to the false and misleading financial statements that were the focus of the original complaint.  When a company itself takes over derivative litigation, it is inevitable that it will have access to more information that will enable it to make more specific claims than what could be alleged in a pre-discovery initial pleading.  The SAC is more in-depth than the original filing, but the complaints share a common core of operative facts.  Because Brocade's claims arise out of the same stock option transactions, Rule 15(c) is satisfied and the claims in the SAC relate back to the original June 2005 filing date.  See Martell v. Trilogy Ltd., 872 F.2d 322, 327 (9th Cir. 1989).  Thus, there is no statutory time-bar to the claims asserted against Defendants Reyes, Canova, Dempsey, and Neiman.

b. Indemnification Agreements

Apart from the issue of a statutory time-bar, Defendants Dempsey and Neiman also argue that Brocade is contractually barred from asserting a fraud claim under their individual indemnification agreements.

These agreements provide:

> No legal action shall be brought and no cause of action shall be asserted by or in the right of the Company against Indemnitee . . . after the expiration of two years from the date of accrual of such cause of action, and any claim or cause of action of the Company shall be extinguished and deemed released unless asserted by the timely filing of a legal action within such two-year period; provided, however, that if any shorter period of limitations is otherwise applicable to any such cause of action, such shorter period shall govern.

United States District Court
For the Northern District of California

1    Both Delaware and California courts recognize contractual provisions shortening the

2  relevant statute of limitations as valid and enforceable.  See, e.g., Wesselman v. Travelers

3  Indem. Co., 345 A.2d 423, 424 (Del. 1975) (per curiam); Hambrecht & Quist Venture

4  Partners v. Am. Med. Int'l, Inc., 38 Cal. App. 4th 1532, 1548 (1995) (contractual agreement

5  establishing a period of limitations is enforceable "provided it is reasonable.").

6    Here, the indemnification agreement operates to bar the fraud claims newly brought

7  against Dempsey and Neiman.[2]  Under the contract's plain language, Brocade is foreclosed

8  from asserting "any claim or cause of action" more than two years after such claim or cause

9  of action accrued.  As discussed above, the fraud claims accrued in October 2004, at the

10  point when the Company was put on inquiry notice of the backdating scheme.  No § 10(b) or

11  California fraud claim was asserted against these Defendants until August 1, 2008, more than

12  four years later.[3]

13    Plaintiff argues that under Moreno v. Sanchez, 106 Cal. App. 4th 1415 (2003), the

14  contractual period of limitations should be tolled.  Even assuming that California law applies

15  to this matter (an issue contested by the parties), Moreno merely stands for the limited

16  proposition that a cause of action may not accrue in a suit against a home inspector until the

17  injury is discovered.  Id. at 1428-29.  Applying the discovery rule here means that the § 10(b)

18  claim accrued in October 2004, when the Company was put on inquiry notice of Defendants'

19  conduct.  Moreno simply cannot be extended far enough to relieve Brocade of the

20  indemnification it agreed to provide Dempsey and Neiman.

21    Rule 15's "relation back" principle is of no avail to Plaintiff here, as it applies to

22  prevent the running of a statutory period of limitations.  Here, Defendants seek protection

23  under a contractual limitation agreement.  Although the two complaints share the same core

24  operative facts, Rule 15 was not intended to undermine an agreement between sophisticated

26    [2]    Defendant Reyes had a similar indemnification agreement with Brocade, but it was subject to a tolling agreement that deferred its application for two years.  As such, Reyes is not
27  protected by the indemnification provision here.

28    [3]    Because the breach of fiduciary duty claims were timely filed in the original complaint, the indemnification agreement does not apply to bar those claims here.

17

United States District Court
For the Northern District of California

1  parties that defines the contours of their liability.  The Company is bound by the contractual

2  agreement it had with these Defendants, and its attempt to escape the agreement through

3  arguments based on tolling is unavailing.  Therefore, the claims for fraud under § 10(b) and

4  California Civil Code §§ 1709 and 1710 are barred by the indemnification agreement as to

5  Defendants Dempsey and Neiman.[4]  These claims are timely as to Defendant Canova as he

6  was not subject to the same indemnification agreement and these claims do relate back to the

7  filing of the original federal complaint.  The claims are also timely as to Defendant Reyes as

8  his indemnification agreement had been contractually tolled by the parties.[5]

9              2.    Six New Federal Defendants

10        Defendants Jensen, Bossi, Leslie, Cuthbert, Bonderson, and Byrd were not named in

11 the original federal complaint.  Different considerations therefore apply as to whether it is

12 appropriate to include them in the suit at this point.

13             a.    Rule 15 "Relation Back"

14        Under Rule 15, a new defendant may be made party to an existing complaint if (1) the

15 claim arose out of the same conduct, transaction, or occurrence; (2) the new defendants

16 received sufficient notice of the original action within 120 days so as not to be prejudiced in

17 defending on the merits; and (3) the new defendants knew or should have known that "but

18 for a mistake concerning the proper party's identity" the complaint would have included

19 them.  Fed. R. Civ. P. 15(c)(1)(C); Percy v. San Francisco Gen. Hosp., 841 F.2d 975, 978

20 (9th Cir. 1988).  The main objective is avoiding prejudice to the party to be added.  Id.

21 Plaintiff argues that since all (except for Bossi) were party to the timely-filed state court

---

[4]     The Court notes that Defendants Byrd and Leslie also had the same indemnification agreement with Brocade.  The analysis on the enforceability of the indemnification agreement applies in equal force to Defendants Byrd and Leslie.  Because Byrd and Leslie were not party to the original federal complaint, they are discussed separately. Ultimately, Byrd and Leslie need not rely on the contractual indemnification because Brocade's claims are untimely against through application of the relevant statutes of limitation.

[5]     The Court hereby clarifies its Memorandum Order issued on December 12, 2008. See Dkt. 375.  There, the Court stated that the fraud claims were dismissed as to Defendant Reyes as untimely.  The claims are indeed dismissed, but on the ground that Plaintiff failed to state a claim for fraud.  The merits of this claim are discussed below.

1   action, they were put on notice of the likelihood of this suit and would not suffer prejudice as

2   a result of defending in the federal venue.

3          The first requirement of Rule 15 is met here because Plaintiff's claims arise out of the

4   same transactions and core facts alleged in the original complaint.  The second requirement

5   of the relation back doctrine, notice, is also satisfied.  "Informal notice is sufficient if it

6   allows the defendant the opportunity to prepare a defense."  Abels v. JBC Legal Group, P.C.,

7   229 F.R.D. 152, 158 (N.D. Cal. 2005).  As a result of their involvement with the state court

8   action, Defendants had notice of the derivative federal complaint filed less than a month after

9   the state law claim was filed.  Defendants will not suffer significant prejudice since they have

10  already been actively involved in defending similar claims, albeit in a different forum.

11         The obstacle preventing amendment here is that the "mistake" prong of Rule 15(c) is

12  not met.  If these Defendants were omitted because they were unknown to the plaintiff at the

13  time the complaint was filed, then amendment may be proper.  See Kilkenny v. Arco Marine

14  Inc., 800 F.2d 853, 856-58 (9th Cir. 1986).  However, if a plaintiff is aware of the potential

15  defendant's identity at the time the original complaint is filed, but is uncertain whether the

16  potential defendant may be found liable, amendment is not allowed to defeat the statute of

17  limitations.  Brink v. First Credit Res., 57 F. Supp. 2d 848, 856 (D. Ariz. 1999).  Similarly, if

18  the plaintiff learns of the defendant within the limitations period, but seeks to add the

19  defendant only after the period has expired, amendment is not allowed.  Id.  "In these two

20  situations, the plaintiff's failure to add the defendant(s) before the expiration of the statute of

21  limitations cannot be characterized as a 'mistake concerning . . . identity' because the

22  plaintiff was aware of the new party's identity before the statute of limitations had run."  Id.

23  "The defendant deserves the protection of the statute of limitations because he or she may

24  believe the plaintiff made a conscious decision not to include him or her."  Id.; see also

25  Kilkenny, 800 F.2d at 857-58 ("Rule 15(c) was never intended to assist a plaintiff who

26  ignores or fails to respond in a reasonable fashion to notice of a potential party").

27         The defendants who were not named in the original federal action are Byrd, Leslie,

28  Bonderson, Cuthbert, Jensen and Bossi.  As high-ranking officers and directors, it is hard to

United States District Court
For the Northern District of California

1  imagine that these parties were completely unknown to plaintiffs so as to make their

2  omission from the original complaint a "mistake" under Rule 15.  As this prong of the

3  "relation back" doctrine is not satisfied, Brocade is not be permitted to escape the statute of

4  limitations by amending the complaint, over three years after it was originally filed, to add

5  these Defendants.  Permitting amendment in these circumstances would extend the Rule 15

6  procedure beyond its intended scope.

7                              b.    Equitable Tolling

8          Implicitly acknowledging that it does not meet the requirements of Rule 15 itself,

9  Brocade attempts to rely on equitable tolling principles to bring the new Defendants into this

10  suit.  Under California and federal law, a statute of limitations may be tolled where the

11  complaint reveals (1) timely notice to the defendant; (2) lack of prejudice; and (3) good faith

12  and reasonable conduct by the plaintiff in filing the late claim.  Daviton v. Columbia/HCA

13  Healthcare Corp., 241 F.3d 1131, 1137-38 (9th Cir. 2001) (applying California law); Oltman

14  v. Holland Am. Line, Inc., 538 F.3d 1271, 1280 (9th Cir. 2008) (federal law).  Under

15  Delaware law, tolling is available only until a plaintiff is on inquiry notice of the facts giving

16  rise to the wrong.  Weiss v. Swanson, 948 A.2d 433, 451 (Del. Ch. 2008).

17          Equitable tolling simply does not apply under these circumstances.  The doctrine is a

18  judicially-created mechanism whereby a court may toll the running of the statute of

19  limitations to avoid manifest injustice.  It is usually invoked in circumstances where a

20  plaintiff makes a technical pleading error and the statute of limitations expires before he can

21  cure the defect.  See, e.g., Burnett v. New York Cent. R.R., 380 U.S. 424, 429 (1965)

22  (plaintiff injured in railway accident filed claim in wrong court; he "has not slept on his

23  rights but, rather, has been prevented from asserting them" by mistake); Oltman, 538 F.3d at

24  1280 (couple sickened on cruise; their "timely state court complaint was dismissed for

25  improper forum, they then promptly filed in federal court").

26          The equitable rationale supporting the tolling of a statute of limitations for diligent but

27  mistaken plaintiffs is simply not present in this case.  Tolling is available when "the interests

28  of justice so require."  Azer v. Connell, 306 F.3d 930, 936 (9th Cir. 2002).  Defendants were

20

United States District Court
For the Northern District of California

likely on notice of these claims as a result of the state court action, but justice does not require application of the tolling doctrine in these circumstances.  The state court action has not been dismissed, rather it has been stayed pending the outcome of this action.  Thus, Plaintiff would not lose all remedies against the state court Defendants if equitable tolling is not permitted here.  Furthermore, Plaintiff (through its shareholders) did file a timely complaint in federal court; yet they chose not to pursue a claim against certain Defendants. To apply tolling to this corporate Plaintiff would be an unwarranted extension of the doctrine's underlying principles, particularly where Brocade actively opposed this litigation for nearly two years before changing course.

Brocade concedes that Rule 15 alone is insufficient to add these new Defendants, but argues that equitable tolling <u>plus</u> relation back should permit the untimely claims.  Plaintiff's argument compounds two separate doctrines and asks this Court to come to an unprecedented conclusion.  Neither relation back nor equitable tolling applies here, and looking at the two doctrines in concert does not remedy the problem.

Accordingly, the claims asserted in the SAC that have a statute of limitations of less than four years are barred as to Defendants Byrd, Leslie, Bonderson, Cuthbert, Jensen and Bossi.  Equitable tolling does not apply, and the requirements for "relation back" under Rule 15 have not been met.

V.      The Merits of the Claims

Insofar as the Court finds certain claims are not time-barred, it proceeds to a discussion of whether Brocade has met its pleading burden on the remaining causes of action.

A.      Claim One - Civil RICO Liability

Plaintiff alleges a claim under the civil RICO statute against Defendant Reyes.  The PSLRA amended RICO to eliminate liability for most securities fraud claims, but such a claim remains viable against any person convicted on criminal charges in connection with the fraud.  18 U.S.C. § 1964(c).  Reyes was convicted on ten counts stemming from the conduct alleged in the SAC.

21

1    The federal RICO statute provides that "[a]ny person injured in his business or

2    property by reason of a violation of [18 U.S.C. § 1962]" has a cause of action for which

3    treble damages may be recoverable.  18 U.S.C. § 1964(c).  Section 1962 creates substantive

4    civil liability for racketeering activity.  See 18 U.S.C. § 1962.  The Supreme Court has held

5    that this "by reason of" language requires that RICO plaintiffs show proximate causation,

6    one aspect of which is a "direct relation between the injury asserted and the injurious conduct

7    alleged."  Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 268 (1992).  "Thus, a plaintiff

8    who complains of harm flowing merely from the misfortunes visited upon a third person by

9    the defendant's acts [is] generally said to stand at too remote a distance to recover."  Id. at

10   268-69.

11   The RICO claim is dismissed because the SAC fails to allege that any injuries

12   suffered by Brocade were the "preconceived purpose" or "specifically-intended

13   consequence" of Reyes' acts.  See In re American Express Co. S'holder Litig., 39 F.3d 395,

14   400 (2d Cir. 1994); Meng v. Schwartz, 116 F. Supp. 2d 92, 96 (D.D.C. 2000) (dismissing

15   RICO claim where "[n]owhere in the plaintiffs' pleading is there a claim that [the defendant]

16   sought to harm [the plaintiff] through his actions").  To the contrary, the SAC alleges that

17   Reyes used the backdating program in part to attract and retain talented individuals, to the

18   benefit of the company.  See SAC ¶¶ 32, 74, 188.  These allegations undermine Brocade's

19   RICO claim.  Where conduct was not intended to injure the plaintiff, a RICO claim may not

20   survive, even if the plaintiff eventually suffered harm.  See American Express, 39 F.3d at

21   400; Meng, 119 F. Supp. 2d at 96-97.  The Court not persuaded that Reyes acted in the

22   sole interest of benefitting Brocade, but no facts are alleged showing that Reyes set out

23   specifically to injure the Company.  To the contrary, the complaint suggests the injury to the

24   Company was an ancillary consequence of Reyes' misdeeds.  See also In re Teledyne Def.

25   Contracting Deriv. Litig., 849 F. Supp. 1369, 1374 (C.D. Cal. 1993).  Accordingly, this claim

26   is dismissed with leave to amend.

27   ///

28   ///

**United States District Court**
For the Northern District of California

B      Claims Two and Nine - Fraud Under Federal and State Law

The fraud claims are not categorically time-barred only as to Defendants Reyes and Canova.  The fraud claims stem from the same core of operative facts as those alleged in the original federal complaint, so relation back is appropriate.  Canova was party to the original federal court action and did not have an indemnification agreement with Brocade; Reyes' indemnification agreement had been tolled.

1.      Section 10(b) Claim

Liability for violation of § 10(b) of the Exchange Act and Rule 10b-5 lies in connection with either (i) a material misrepresentation or omission or (ii) conduct that constitutes a deceptive act or furtherance of a fraudulent scheme, including any device, scheme, or artifice to defraud.  15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5.  To state a claim, Plaintiff must plead (1) a misrepresentation or the use or employment of any manipulative or deceptive device or contrivance; (2) scienter; (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation.  Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc., 128 S. Ct. 761, 768 (2008); Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 341 (2005).

Claims brought under this section are subject to the heightened pleading requirements under Fed. R. Civ. P. 9(b) and the PSLRA.  Plaintiff must, therefore, plead sufficiently particularized facts to support its allegations concerning false or misleading statements.  See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499, 2504 (2007).  Plaintiff must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1).

To survive a motion to dismiss, Plaintiff must allege that a party played a primary role in the faulted option grants; a claim for aiding and abetting in a private action under §10(b) can no longer be maintained.  See Stoneridge, 128 S. Ct. at 769.  The inquiry is whether a defendant offered "substantial participation" so that he may be considered a "primary

23

violator" of the securities laws.  <u>Simpson v. AOL Time Warner Inc.</u>, 452 F.3d 1040, 1048 (9th Cir. 2006), <u>vacated on other grounds sub nom. Avis Budget Group, Inc. v. Cal. State Teachers' Ret. Sys.</u>, 128 S. Ct. 1119 (2008).  To be held liable as a primary violator, the defendant "must have engaged in conduct that had the principal purpose and effect of creating a false appearance of fact in furtherance of the scheme."  <u>Id.</u>  "It is not enough that a <u>transaction</u> in which a defendant was involved had a deceptive purpose and effect; the defendant's <u>own conduct</u> contributing to the transaction or overall scheme must have had a deceptive purpose and effect."  <u>Id.</u>  A defendant does not actually have to have made the fraudulent statements to be held liable, but a plaintiff must show more than a generalized scheme of misconduct.  <u>Id.</u>; <u>Stoneridge</u>, 128 S. Ct. at 769.

Brocade's § 10(b) claim is not based on misrepresentations in the company's financial statements.  Rather, it challenges statements made in the Company's internal option granting documents.  It is undisputed that Defendant Canova was neither the author nor the signatory of those documents.  Thus, the Company's § 10(b) theory is that Canova either (a) "substantially participated" in the making of the false statements; or (b) committed "deceptive acts" related to the statements.

The allegations against Defendant Canova are as follows:

- Canova, Brocade's CFO, was in charge of the Finance Department and therefore responsible for maintaining accurate records of stock-option grants.  SAC ¶ 762.

- He was involved in creating the financial formula used to determine the number of supplemental options to grant through under the April 20, 2001 "Add-On Program."  SAC ¶ 393.  He then received supplemental options through the Add-On Program.  SAC ¶¶ 394-95.

- He received an email from Defendant Bossi stating: "If you recall we had all been jumping through hopes [sic] and bending over backwards for this guy . . . including forging option paperwork and offer letters so he could get better priced options."  SAC ¶ 488.

- He failed to react to investigate after receiving emails indicating possible manipulation of option grants.  SAC ¶¶ 1084-85, 404.

- He was "involved in" the granting of options to purported "part-time" employees. SAC ¶¶ 184-85.

- He "understood that new hires were granted stock options with exercise prices based on dates before their full-time employment began [and] understood that those earlier dates were chosen because the stock prices were lower on those dates."  SAC ¶ 776.

- He approved backdating options for an operations director, but stated he "didn't want this happening again."  SAC ¶ 1088.

- He knew that a failure to adhere to Company policies governing stock options could result in a compensation charge.  SAC ¶ 1092.  Nonetheless, he helped Bonderson select a termination date to give him a longer exercise period for his options.  SAC ¶ 1095.  He was also aware that another terminated employee had received extended vesting periods.  SAC ¶ 1096.

None of these factual assertions has the effect of demonstrating that Canova was a "primary violator" of the securities laws.  It is not clear what specific misrepresentations Canova is allegedly responsible for, or that his own conduct had a deceptive purpose.  While these allegations may show that Canova was complicit in the backdating scheme, they do not show that his conduct was primarily responsible for any specific material misrepresentation.

As for Defendant Reyes, the obstacle is reliance.  Brocade's pleading is devoid of allegations that would show reliance in connection with the purchase or sale of a security.  In Verisign, this court held that reliance is not proven where a complaint "does not identify a single [company] officer or director who relied on the supposedly false or misleading financial statements in deciding to undertake the stock repurchase on [the company's] behalf."  531 F. Supp. 2d 1173, 1209 (N.D. Cal. 2007).  Brocade has not identified any individuals who actually relied on the false grant documentation.  Rather, the SAC suggests that knowledge of the improper conduct was widespread amongst the corporate decisionmakers.

United States District Court
For the Northern District of California

1    Brocade asks us to reject the holding in Verisign, in accord with In re Countrywide

2  Financial Corp. Derivative Litigation, 554 F. Supp. 2d 1044, 1073 (C.D. Cal. 2008).

3  However, the misrepresentations at issue in Countrywide were public and caused investors to

4  rely on erroneous information.  See id. at 1053.  Countrywide is inapposite because here,

5  Brocade's claim relies upon alleged misrepresentations made in internal documentation

6  within the Company.  Under this theory, Brocade must show reliance by internal

7  decisionmakers rather than simply show general market reliance on public misstatements.

8    In sum, the § 10(b) claim against both Reyes and Canova is dismissed with leave to

9  amend.[6]

10              2.    State Fraud Claims

11    Sections 1709 and 1710 of the California Civil Code are codifications of common-law

12  fraud and negligent misrepresentation.  See Small v. Fritz Cos., 30 Cal. 4th 167 (2003).  To

13  recover for intentional fraud, a plaintiff must allege that (1) a defendant misrepresented a past

14  or existing material fact; (2) the defendant knew the fact was false; (3) the defendant

15  intended to induce a plaintiff's reliance; (4) the plaintiff reasonably relied on the

16  misrepresentation; and (5) damages resulted.  Id. at 173.  For a negligent misrepresentation

17  claim, the defendant need not have knowledge of the falseness of his representation or the

18  intent to defraud.  Id.  A claim for fraud under state law must meet the particularity

19  requirements of Fed. R. Civ. P. 9(b).  Id. at 184.

20    The federal fraud claim is subject to a more exacting standard than the state law claim.

21  Yet, for the same reasons discussed above as to why Brocade failed to meet its pleading

22  burden on the federal claim, the Court dismisses the California fraud claims against

23  Defendants Reyes and Canova.

24

25  _____

26    [6]    Because it is not beyond doubt that Plaintiff could allege some set of facts
consistent with its complaint that would entitle it to relief, the Court must dismiss these claims

27  with leave to amend.  See Schreiber Dist. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th
Cir. 1986).  Yet it is unclear what more could possibly be said.  The Court has the impression

28  that Plaintiff has played all of its cards in its 282-page complaint.  If Brocade was not able to set
forth a fraud claim in that lengthy document, it is hard to imagine what more could be added to
plead a fraud claim against Canova or Reyes with the requisite specificity.

**United States District Court**
For the Northern District of California

1    C.    Claims Three and Four - Section 304 of the Sarbanes-Oxley Act and Section

2          13(b) of the Exchange Act

3          Every court to address the issue has held that there is no private right of action under

4    Section 304 of the Sarbanes-Oxley Act (SOX § 304).  This Court does not hold otherwise.

5    After briefing was completed in this matter, the Ninth Circuit issued an opinion that

6    considered the language and history of this provision and ultimately concluded "that section

7    304 does not create a private right of action."  In re Digimarc Corp. Deriv. Litig., __ F.3d __,

8    2008 WL 5171347, at *8 (9th Cir. Dec. 11, 2008).  Under Digimarc, Plaintiff's arguments on

9    this issue are expressly foreclosed.  Claims Three and Four are hereby dismissed.

10         D.    Claim Five - Duty of Care

11         After applying the statue of limitations, a duty of care claim remains as to Defendants

12   Reyes, Canova, Neiman, and Dempsey.  Fiduciaries have an obligation to use the "amount of

13   care which ordinarily careful and prudent men would use in similar circumstances" in

14   managing the affairs of a corporation.  In re Walt Disney Co. Deriv. Litig., 907 A.2d 693,

15   746 n.402, 749 (Del. Ch. 2005) (internal quotation marks omitted).  To plead a violation of

16   the duty of care, a plaintiff need not allege that a defendant knowingly breached or even

17   consciously disregarded his fiduciary duty to the company; gross negligence is sufficient.

18   See Cinerama, Inc. v. Technicolor, Inc., 663 A.2d 1134, 1148 (Del. Ch. 1994).

19         Defendants make various arguments regarding the sufficiency of Brocade's

20   allegations on this claim.  At the very least, Brocade has adequately pled conduct amounting

21   to gross negligence.  The SAC alleges Defendants approved, administered, ratified, and/or

22   accepted faulted options grants.  This conduct, if true, states a claim for breach of the

23   fiduciary duty of care.

24         The Court is not persuaded that Defendants Neiman and Dempsey are protected by 8

25   Del. Code § 141(e) as a matter of law.  That provision permits directors reasonably to rely on

26   the expertise of management, yet it does not allow directors to completely delegate away

27   their fiduciary responsibilities.  As the facts are currently pled, it is not clear that Defendants

28   Neiman and Dempsey are exculpated from their alleged breaches of fiduciary duties because

they purportedly relied on Reyes' representations.  In addition, Brocade alleges that the

Compensation Committee Defendants were themselves negligent in signing off on backdated

options – not simply that they are liable for Reyes' actions.

Defendants further argue that Brocade's Certificate of Incorporation relieves them

from liability on a duty of care claim.  The Charter includes an indemnification provision, but

not an exculpatory provision.  The two are not the same.  The indemnification provision

"does not necessarily preclude personal liability for these directors because [indemnification]

is not a grant of absolute immunity."  <u>Bergstein v. Texas Int'l Co.</u>, 453 A.2d 467, 471 (Del.

Ch. 1982).

The Court also refuses to hold that Brocade is estopped from changing positions with

respect to indemnification.  Before the SLC was involved in this litigation, Brocade made

statements that are contrary to its current position on this issue.  Judicial estoppel is a

doctrine that precludes a party from gaining an advantage by taking one position, and then

seeking a second advantage by taking an incompatible position.  <u>Rissetto v. Plumbers &</u>

<u>Steamfitters Local 343</u>, 94 F.3d 597, 600 (9th Cir. 1996).  A court has discretion in

determining whether to invoke this equitable doctrine.  <u>Id.</u> at 601.  In this instance, the Court

refuses to hold that Brocade is barred from taking a position contrary from what it asserted in

a letter to the Santa Clara Superior Court.  Judicial estoppel will not apply.

Finally, there is evidence that an exculpatory provision was intended to be part of

Brocade's Charter, but was mistakenly omitted.  Brocade was originally a California

corporation and had such a provision.  In 1999, Brocade was reincorporated as Delaware

company.  The new Certificate of Incorporation omitted this provision, but had two identical

indemnity provisions appearing back to back.  This suggests that the exculpation language

was inadvertently left out of the new charter.

If an error occurred, a company may seek to correct its charter under 8 Del. Code §

103(f) or to reform it under the common law of reformation.  A correction is effective "as of

the date the original instrument was filed, except as to those persons who are substantially

and adversely affected by the correction and as to those persons the instrument as corrected

**United States District Court**
For the Northern District of California

1   shall be effective from the filing date." 8 Del. Code § 103(f).  As the Certificate of

2   Incorporation currently stands, however, there is no exculpatory provision.  An argument

3   regarding reformation is not properly before this Court.  Claim Five may proceed against

4   Defendants Reyes, Canova, Neiman, and Dempsey.

5           E.      Claim Six - Duty of Loyalty - Self-Dealing

6           To establish self-dealing, a plaintiff must plead that the defendants either (1) stood on

7   both sides of a transaction and dictated its terms in a self-dealing way or (2) received a

8   personal benefit that was not enjoyed by the shareholders generally.  Cede & Co. v.

9   Technicolor, Inc., 634 A.2d 345, 362 (Del. 1993).  Here, Brocade has alleged with specificity

10  that Defendants received and exercised failed options, and that some Defendants stood on

11  both sides of these transactions.

12          The only remaining parties against whom this claim is brought are Defendants Reyes

13  and Canova.  Aside from arguments regarding the statute of limitations, they do not

14  challenge the sufficiency of the pleading on this claim in their motions to dismiss.

15          F.      Claim Seven - Duty of Loyalty - Lack of Good Faith

16          Claim Seven is asserted against Defendants Reyes, Canova, Dempsey, and Neiman.

17  Plaintiff alleges that all Defendants breached their fiduciary duty of loyalty to the company

18  by failing to act in good faith.  Under Delaware law, the duty of good faith is breached where

19  a fiduciary acts with a purpose other than that of advancing the best interests of the

20  corporation, with the intent to violate the law, or where the fiduciary fails to act in the face of

21  a known duty to act.  See Stone v. Ritter, 911 A.2d 362, 370 (Del. 2006); In re Walt Disney

22  Co. Deriv. Litig., 906 A.2d 27, 67 (Del. 2006).  In Ryan v. Gifford, the Delaware Chancery

23  Court held that a fiduciary's knowing approval of backdated options in violation of a

24  shareholder-approved plan when coupled with false disclosures cannot, by definition,

25  constitute "anything but an act of bad faith."  918 A.2d 341, 357-58 (Del. Ch. 2007).  "At

26  their heart, all backdated options involve a fundamental, incontrovertible lie."  In re Tyson

27  Foods, Inc., 919 A.2d 563, 592 (Del. Ch. 2007).

28

United States District Court
For the Northern District of California

1    Here, the SAC contains extensive, particularized allegations of overt acts evidencing a

2    lack of good faith.  These include the signing of false financial statements, the fabrication of

3    minutes for board meetings that never occurred, the intentional forging of options

4    documentation, and the creation of fictitious dates of hire and termination of employees.  If

5    proven, these allegations would raise serious questions as to whether Defendants acted in

6    good faith in accordance with their fiduciary duties.  This claim survives the motions to

7    dismiss.

8            G.    Claim Eight - Duty of Loyalty - Oversight

9            A failure in oversight claim is asserted against Defendants Reyes, Canova, Neiman

10   and Dempsey.  Brocade alleges that these parties breached their duty of loyalty by failing to

11   exercise the requisite degree of oversight over the affairs of the company.  Referred to as a

12   Caremark claim, this cause of action permits directors and officers to be held liable for their

13   inaction or ignorance of liability-creating activities within the corporation.  See In re

14   Caremark Int'l Inc. Deriv. Litig., 698 A.2d 959 (Del. Ch. 1996).  Caremark duties are

15   breached when fiduciaries either fail to implement any reporting or information system or

16   controls or, having implemented such controls, consciously fail to oversee their operation,

17   thus disabling themselves from being informed of risks or problems requiring their attention.

18   Stone, 911 A.2d at 370.  Courts look to see if there were "red flags" that should have put

19   defendants on notice of the offensive conduct or weakness of the corporation's internal

20   controls.  Id.  "[I]mposition of liability requires a showing that the directors knew that they

21   were not discharging their fiduciary obligations."  Id.  Such conduct demonstrates a

22   "conscious disregard" for a fiduciary's responsibilities and breaches the duty of loyalty "by

23   failing to discharge that fiduciary obligation in good faith."  Id.; Disney, 906 A.2d at 66-67.

24           The SAC alleges systemic deficiencies in the options-granting process.  Over several

25   years, Reyes and Jensen granted options without authority.  The Compensation Committee

26   exercised little to no supervision over what they were doing, and the Committee's members

27   themselves signed backdated grant documentation.  See Ryan, 918 A.2d at 355 n.35 (stating

28   that directors who backdate options must know that the options were being backdated).  At

United States District Court
For the Northern District of California

1  one point, the Committee asked Reyes to deliver a certificate evidencing the stock option

2  grants, but Reyes did not comply and the Board took no further action.

3      Here, Brocade has adequately alleged multiple instances of willful ignorance on

4  Defendants' part, so the <u>Caremark</u> standard is met.  Plaintiff adequately pled that Defendants

5  consciously failed to monitor the reporting systems.

6      H.     <u>Claim Ten - Contribution</u>

7      Brocade seeks contribution for the $160 million settlement it has agreed to pay in the

8  related securities class action.  Under the PSLRA, contribution is available against a party

9  who has joint responsibility for the violation.  <u>See</u> 15 U.S.C. § 78u-4(f); <u>Musick, Peeler &</u>

10 <u>Garrett v. Employers Ins. of Wausau</u>, 508 U.S. 286, 298 (1993).  Defendants allege this

11 claim is not ripe because it has not yet actually paid out the settlement proceeds.  <u>See Asdar</u>

12 <u>Group v. Pillsbury, Madison & Sutro</u>, 99 F.3d 289, 295 (9th Cir. 1996) (holding that a

13 contribution accrues when a judgment is entered against the direct defendants).  On

14 November 18, 2008, the Court granted preliminary approval of the settlement agreement.

15 Under the agreement, $2 million has already been paid, and the remaining money will be

16 transferred if final approval is granted.  The final fairness hearing will be held on January 23,

17 2009.  As there is no final judgment in that case, the claim for contribution is not ripe and is

18 hereby dismissed without prejudice.

19     I.      <u>Claim Eleven - Unjust Enrichment</u>

20     The remaining Defendants against whom this claim is asserted are Reyes and Canova.

21 Under Delaware law, unjust enrichment is the "unjust retention of a benefit to the loss of

22 another, or the retention of money or property of another against the fundamental principles

23 of justice or equity and good conscience."  <u>Schock v. Nash</u>, 732 A.2d 217, 232-33 (Del.

24 1999) (internal citation omitted).  The elements of a claim for unjust enrichment are: "(1) an

25 enrichment, (2) an impoverishment, (3) a relation between the enrichment and the

26 impoverishment, (4) the absence of justification and (5) the absence of a remedy provided by

27 law."  <u>Cantor Fitzgerald, L.P. v. Cantor</u>, 724 A.2d 571, 585 (Del. Ch. 1998).  A defendant

28 may be liable "even when the defendant retaining the benefit is not a wrongdoer" and "even

though he may have received [it] honestly in the first instance." Schock, 732 A.2d at 232-33. In In re Zoran Corp. Derivative Litigation, a court in this district upheld an unjust enrichment claim based on similar options backdating activity.  511 F. Supp. 2d 986, 1018 (N.D. Cal. 2007).  In response to arguments that the complaint lacked specific facts as to how much profit the defendant received, the court noted that "[s]uch facts are not necessary at the pleading stage and are issues to be resolved after discovery."  Id.; see also In re Atmel Corp. Deriv. Litig., 2008 WL 2561957, at *12 (N.D. Cal. June 25, 2008) (denying motion to dismiss unjust enrichment claim in options backdating case).

Here, Brocade alleges that Defendants received faulted stock options and exercised some or all of those options.  The Company was harmed because it received less than it otherwise would for those stock options.  The pleading is sufficient on this claim.

J.     Alternative Theories Asserted Against Defendants Bossi & Jensen

Brocade asserts claims twelve and thirteen against Defendants Bossi and Jensen as alternative theories in the event that these parties were not fiduciaries of the Company. These two state law claims are for (1) breach of an employee's duty of loyalty, and (2) aiding and abetting a breach of fiduciary duty.

1.     Jensen & Bossi's Fiduciary Status

In order to avoid liability for the claims based upon breaches of fiduciary duties, Defendants Jensen and Bossi assert that they did not owe Brocade fiduciary duties because they were not officers.  Delaware law allows companies to appoint officers as designated "in the[ir] bylaws or in a resolution of the board of directors which is not inconsistent with the[ir] bylaws."  8 Del. Code § 142(a).  Brocade's bylaws define "officers" to include "one or more Vice Presidents, and such other Officers that will be appointed by the Board of Directors." Jensen, as the Vice President of HR, was therefore an officer of the Company and did owe it fiduciary duties.  As a result, claims twelve and thirteen are not applicable to Jensen and are hereby dismissed.

On the other hand, Bossi, as Controller, was not an officer of the Company.  Brocade points to a Delaware service of process statute which provides that an "officer" may include

United States District Court
For the Northern District of California

1    a "controller."  See 10 Del. Code § 3114(b).  This reference is not enough, however, to

2    determine that Bossi was in fact an officer of Brocade.  Brocade's bylaws do not define its

3    "officers" to include its Controller, Bossi was not appointed by Board resolution, and his

4    offer letter provides that he was an "at-will employee."  Furthermore, Bossi, as the

5    Controller, was under the control of another officer, the CFO.  See SAC ¶ 1253.  Because

6    Bossi was never a corporate fiduciary of Brocade, he cannot be liable for any direct breach of

7    fiduciary duty, but he could potentially be liable for claims available against non-fiduciaries.

8                      2.      Claim Twelve - Employee's Duty of Undivided Loyalty

9            This claim applies only to Defendant Bossi, as he is not a fiduciary of the Company

10   and the four-year statute of limitations has not yet expired.  Under California law, an

11   employer may expect the undivided loyalty of its employees.  See Huong Que, Inc. v. Luu,

12   150 Cal. App. 4th 400, 410 (2007).  The elements of this claim are (1) the existence of a

13   relationship giving rise to a duty of loyalty, (2) one or more breaches of that duty, and (3)

14   damage proximately caused by that breach.  Id.  The duty of loyalty is "breached, and may

15   give rise to a cause of action in the employer, when [an] employee takes action which is

16   inimical to the best interests of the employer."  Stokes v. Dole Nut Co., 41 Cal. App. 4th 285,

17   295 (1995).

18           As Bossi points out, this cause of action has only been applied in the context of an

19   employee transferring his loyalty from his employer to a competing business by using or

20   disclosing confidential information.  See, e.g., Huong Que, Inc., 150 Cal. App. 4th at 417;

21   Stokes, 41 Cal. App. 4th at 295-96.  The Court can find and Brocade cites to no California

22   cases that have applied this theory in a broader context, and this Court declines to expand the

23   state claim so as to encompass this conduct.  Accordingly, this claim is dismissed without

24   leave to amend.

25                      3.      Claim Thirteen - Aiding and Abetting a Breach of Fiduciary Duty

26           As discussed above, this claim also applies only to Defendant Bossi.  Under California

27   law, a defendant may be liable for aiding and abetting in the commission of an intentional

28   tort if he (1) knows of the breaching conduct and gives substantial assistance or

                                                       33

United States District Court
For the Northern District of California

encouragement to the primary actor, or (2) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person.  Casey v. U.S. Bank Nat'l Ass'n, 127 Cal. App. 4th 1138, 1144 (2005).

Brocade has alleged an underlying breach of fiduciary duty by multiple Defendants. It has also alleged that, as the Controller, Bossi assisted other Defendants in their tortious conduct.  Finally, the pleadings sufficiently set forth that Bossi was a knowing participant in the backdating scheme.  Accordingly, this claim against Bossi may proceed.

///

///

VI.   Conclusion

Based on the foregoing, the Court hereby GRANTS dismissal of all claims against Defendants Jensen, Cuthbert, Bonderson, Byrd, and Leslie.

As for Defendant Bossi, the Court GRANTS dismissal of claims five, six, seven, eight, eleven, and twelve; however claim thirteen may proceed.

The Court GRANTS dismissal with leave to amend on the federal and state fraud claims asserted against Defendant Canova.  The claims premised on SOX § 304 are dismissed with prejudice.  The fifth, sixth, seventh, eighth and eleventh causes of action may proceed as to Defendant Canova.

The Court GRANTS dismissal of the federal and state fraud claims asserted against Defendants Neiman and Dempsey.  The fifth, seventh, and eighth causes of action may proceed against these two individuals.

The Court GRANTS dismissal with leave to amend on the civil RICO claim and fraud claims asserted against Defendant Reyes.  The claims premised on SOX § 304 are dismissed with prejudice.  The fifth, sixth, seventh, eighth, and eleventh causes of action may proceed as to Defendant Reyes.

The Court GRANTS dismissal of the claim for contribution without prejudice as to all Defendants because it is not yet ripe for determination.

**IT IS SO ORDERED.**

Dated: January 6, 2009

_____
CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE