DEWEY & LEBOEUF LLP
Barbara A. Caulfield (bcaulfield@dl.com) SBN 108999
Peter E. Root (proot@dl.com) SBN 142348
1950 University Avenue, Suite 500
East Palo Alto, California 94303
Telephone: (650) 845-7000
Facsimile: (650) 845-7333

DEWEY & LEBOEUF LLP
1101 New York Avenue, N.W., Suite 1100
Washington, DC 20005
Telephone: (202) 346-8000
Facsimile: (202) 346-8102

DEWEY & LEBOEUF LLP
1301 Avenue of the Americas
New York, New York 10019
Telephone: (212) 259-8000
Facsimile: (212) 259-6333

*Attorneys for Plaintiff
Brocade Communications Systems, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE BROCADE COMMUNICATIONS SYSTEMS, INC. DERIVATIVE LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. C 05-02233 CRB<br><br>**NOTICE OF MOTION AND MOTION OF PLAINTIFF FOR PARTIAL LIFTING OF STAY AND FOR APPROVAL OF SETTLEMENTS AND ENTRY OF COMPLETE BAR ORDERS AS TO DEFENDANTS NEAL DEMPSEY AND SETH D. NEIMAN**<br><br>Date:     July 24, 2009<br>Time:    10:00 a.m.<br>Judge:   Honorable Charles R. Breyer<br>Dept:    8, 19th Floor |

## TABLE OF CONTENTS

| | Page |
|---|---|
| I. INTRODUCTION | 3 |
| II. BACKGROUND FACTS | 4 |
| III. THE COURT SHOULD APPROVE THE SETTLEMENTS WITH MESSRS. DEMPSEY AND NEIMAN | 7 |
| IV. THE COURT SHOULD ENTER A CONTRIBUTION BAR | 9 |
|     A. Delaware Law Appears To Govern The Contribution Bar | 9 |
|     B. The Requested Bar Order Is Necessary And Appropriate | 10 |
| V. CONCLUSION | 12 |

## TABLE OF AUTHORITIES

### CASES

*Bluth v. Bellow*,
    1987 WL 9369 (Del. Ch. Apr. 9, 1987) ........................................................................ 8

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1991) ................................................................................... 11

*Eichenholtz v. Brennan*,
    52 F.3d 478 (3d Cir. 1995) .................................................................................. 11, 12

*Franklin v. Kaypro Corp.*,
    884 F.2d 1222 (9th Cir. 1989) ............................................................................ 11, 12

*In re Enron Corp. Sec., Deriv. & "ERISA" Litig.*,
    2008 WL 2566867 (S.D. Tex. June 24, 2008) ............................................................ 9

*In re Heritage Bond Litig.*,
    546 F.3d 667 (9th Cir. 2008) ......................................................................... 9, 11, 12

*Valeant Pharm. Int'l v. Jerney*,
    921 A.2d 732 (Del. Ch. 2007) ..................................................................................... 8

*Zapata v. Maldonado*,
    430 A.2d 779 (Del. 1980) ........................................................................................ 7, 8

### STATUTES

10 Del. Code § 6304(b) ................................................................................................ passim

15 U.S.C. § 78u-4(f)(7)(B) ................................................................................................... 2

Cal. Code Civ. P. § 877(a) ................................................................................................. 10

Cal. Code Civ. P. § 877.6 ..................................................................................................... 9

Federal Rule of Civil Procedure 23.1 .................................................................................. 7

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on July 24, 2009 at 10:00 a.m. or as soon thereafter as the matter may be heard in the courtroom of the Honorable Charles R. Breyer, Department 8, 19th Floor, in the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California, plaintiff Brocade Communications Systems, Inc. ("Brocade"), by and through the Special Litigation Committee of its Board of Directors (the "SLC"), will and hereby does move this Court to partially lift the stay of proceedings in this action, and for approval of the settlements between Brocade and, respectively, defendants Neal Dempsey ("Dempsey") and Seth D. Neiman ("Neiman") and entry of contribution bar orders pursuant to these settlements.

1. **Settling Parties**: The parties to these settlements are Brocade, by and through the SLC, and, respectively, Dempsey and Neiman.

2. **Basis and Terms**: The basis and terms of the settlements are set forth in the respective settlement agreements. True and correct copies of the settlement agreement between Brocade and Dempsey (the "Dempsey Settlement Agreement") and the settlement agreement between Brocade and Neiman (the "Neiman Settlement Agreement") are attached as Exhibit A and Exhibit B, respectively, to the accompanying Declaration of Peter E. Root in Support of Plaintiff's Motion for Approval of Settlements and Entry of Complete Bar Orders as to Defendants Neal Dempsey and Seth D. Neiman, and are incorporated herein by reference.

3. **Amount**: The monetary consideration for the settlements with Dempsey and Neiman are valued at $200,000 and $450,000, respectively, which represent the amounts that Dempsey and Neiman will respectively contribute to reduce the legal fees and expenses that Brocade otherwise might be obligated to pay on their behalf.

4. **List of Parties**: The following is a list of all parties to this action:

    a. Plaintiff: Brocade Communications Systems, Inc.

    b. Defendants: Dempsey, Neiman, and Gregory L. Reyes.

5. **Pleadings Affected By Settlements**: The pleading affected by these settlements is the Second Amended Complaint filed by Brocade on August 1, 2008 (the "Complaint").

6. **Request for Entry of Complete Bar Order**: Brocade, by and through the SLC, moves the Court to enter the proposed contribution-bar orders that are provided for in Paragraph 8 of the Dempsey Settlement Agreement and the Neiman Settlement Agreement, the provisions of which proposed orders (other than the name of the settling defendant) are identical (the "Complete Bar Order").

7. **Judgment-Reduction Credit**: The judgment-reduction credit or set-off amount given to non-settling persons for any joint liability with Dempsey and/or Neiman will be the amount provided for in subparagraph 8(a) of the Dempsey Settlement Agreement and the Neiman Settlement Agreement, which provides the judgment-reduction credit will be equal to the Dempsey Releasees' and Neiman Releasees' "pro rata share of the judgment against such person or entity, pursuant to the terms of Delaware law; *provided further* that, if a court should determine that the amount of the judgment-reduction credit should be prescribed in whole or in part by federal law or by California law, the amount of the judgment-reduction credit shall be equal to (*i*) the amount specified in 15 U.S.C. § 78u-4(f)(7)(B), to the extent federal law applies, or (*ii*) the amount of the fee credit provided for in paragraph 1(b) [of each Settlement Agreement] to the extent California law applies."

8. **Request for Dismissal**: Upon entry of the Complete Bar Orders, Brocade will move the Court for an order dismissing with prejudice the remaining claims against Dempsey and Neiman in this action and the related arbitration proceeding.

The present motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the accompanying Declaration of Peter E. Root, the accompanying declaration of the Special Litigation Committee members, the [Proposed] Order Partially Lifting Stay, the [Proposed] Order Approving Settlement and Entry of Complete Bar Order as to Defendant Neal Dempsey, and the [Proposed] Order Approving Settlement and Entry of Complete Bar Order as to Defendant Seth D. Neiman.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiff Brocade Communications Systems, Inc. ("Brocade"), by and through the Special Litigation Committee of its Board of Directors (the "SLC"), respectfully requests that the Court lift the stay of proceedings in this action and enter an Order (*i*) approving settlements that the SLC has reached on behalf of Brocade with defendants Neal Dempsey and Seth D. Neiman and (*ii*) barring contribution claims against Dempsey and Neiman in accordance with 10 Del. Code § 6304(b) and the Court's inherent authority to preclude such claims. The settlement agreements with Dempsey and Neiman – which are attached as Exhibits A and B to the accompanying Declaration of Peter E. Root – provide for Dempsey and Neiman to contribute, respectively, $200,000 and $450,000 to their attorneys to be applied as a credit against legal fees that Brocade otherwise might be obligated to pay on their behalf.

Because the Court has realigned Brocade as the sole plaintiff in this action and has dismissed the original shareholder plaintiffs, the Court's approval of the settlements themselves does not appear to be required. However, the SLC seeks the Court's approval of the settlements out of respect for the Court's long involvement in this litigation and the SLC's desire to ensure that the Court does not disapprove of its handling of this matter on behalf of Brocade.

Court action is required for entry of the requested bar orders, although the Delaware statute appears to be self-executing in precluding contribution claims where – as here – the plaintiff agrees to give nonsettling parties the judgment-reduction credit required by Delaware law. (The settling parties believe that Delaware governs this issue, because the claims being settled are all Delaware-law claims, as are the claims pending against the remaining defendant.) Nevertheless, to preempt any question about whether Messrs. Dempsey and Neiman are protected from contribution claims (for which they might demand that Brocade advance their defense costs), Dempsey and Neiman have conditioned the settlements on the Court's entry of the requested bar orders.

## II. BACKGROUND FACTS

Since 2004, Brocade and several of its former officers, directors, and employees have been embroiled in a series of internal investigations and legal proceedings related to the backdating and manipulation of stock options. Those matters have included two internal investigations, criminal prosecutions and convictions of two high-ranking Brocade officers, SEC investigations and civil enforcement actions, federal- and state-court securities class actions, and several shareholder derivative actions in this Court and in the California Superior Court for the County of Santa Clara. SLC Decl. ¶ 3.[1]

Dempsey and Neiman were named as defendants in the federal- and state-court derivative actions. They are also defendants (along with defendant Gregory Reyes) in the arbitration that followed from the agreement of Brocade (by and through the SLC) and these three defendants to submit their disputes to binding arbitration, and this Court's referral of the matter to binding arbitration.

In February 2008, Brocade appointed the SLC and granted it plenary authority to handle all matters related to the derivative actions, in which Brocade was the nominal defendant. SLC Decl. ¶ 3. On August 1, 2008, the SLC filed a Second Amended Complaint (the "Complaint") on behalf of Brocade in this action against ten former directors, officers, and employees of the company, including Messrs. Dempsey and Neiman, who had served as directors of Brocade and members of the Compensation Committee of the Board of Directors. SLC Decl. ¶¶ 4-5. The Complaint asserted claims against Dempsey and Neiman under federal, Delaware, and California law. *Id.* ¶ 6.

After filing the Complaint, the SLC moved to realign Brocade as the party-plaintiff and to replace the original shareholder plaintiffs in the derivative action. SLC Decl. ¶ 7. The derivative plaintiffs stipulated to Brocade's motion on August 18, 2008. *Id.*; *see also* Docket No. 233. On August 27, 2008, the Court issued an Order realigning Brocade as the sole party-plaintiff, in substitution for the original shareholder plaintiffs. SLC Decl. ¶ 8; *see also* Docket No. 251. The

---

[1] Citations to the "SLC Decl." refer to the joint declaration of Brocade's Special Litigation Committee members Renato A. Dipentima and John W. Gerdelman accompanying this motion.

Court also dismissed the shareholder plaintiffs from the action. *Id.*; Docket No. 251. The case therefore continued as a *direct* action by Brocade, rather than as a derivative action in which Brocade was a nominal party.

On October 2, 2008, the Court entered a stipulated Order amending the Complaint by dismissing without prejudice two of the eight causes of action asserted against Messrs. Dempsey and Neiman: the Sixth Cause of Action for Breach of Fiduciary Duty of Loyalty – Self Dealing, and the Eleventh Cause of Action for Unjust Enrichment. SLC Decl. ¶ 9; *see also* Docket No. 284. On October 6, 2008, Dempsey and Neiman and the eight other defendants moved to dismiss the claims asserted against them in the Complaint. SLC Decl. ¶ 10. On December 12, 2008, the Court issued an Order (Docket No. 375), supplemented by a January 6, 2009 Opinion (Docket No. 377), dismissing the federal- and California-law claims against Dempsey and Neiman but denying their motions to dismiss the remaining three claims under Delaware law alleging various breaches of fiduciary duty – *i.e.*, the Fifth, Seventh and Eighth Causes of Action. SLC Decl. ¶ 11.

Messrs. Dempsey and Neiman were among five defendants remaining in this action following the Court's ruling on the motions to dismiss.[2] Brocade reached settlements with two (Messrs. Bossi and Canova) of these five defendants in January 2009, and this Court subsequently approved the settlements and entered contribution bar orders as to those two defendants. SLC Decl. ¶ 14; *see also* Docket Nos. 434, 435.

Brocade and the remaining three defendants in this action – Dempsey and Neiman and Gregory Reyes – entered into an Agreement to Binding Arbitration. SLC Decl. ¶ 15. On February 27, 2009, the Court entered a stipulated Order Referring Action to Binding Arbitration, and stayed this action pending completion of the arbitration (the "Arbitration"). *Id.* ¶ 16; *see also* Docket No. 429. On April 3, 2009, following a preliminary hearing in the Arbitration, the arbitration panel granted the motion of Dempsey and Neiman for summary and declaratory

---

[2] The Court dismissed all claims against five other defendants – the so-called State Court Defendants – as untimely for purposes of this action. SLC Decl. ¶ 12. In so ruling, the Court stated that "[t]he state [derivative] action has not been dismissed, rather it has been stayed pending the outcome of this action. Thus, Plaintiff would not lose all remedies against the state court Defendants if equitable tolling is not permitted here." Docket No. 377 at 21.

judgment on director exculpation, and dismissed the claim for breach of the fiduciary duty of care against Dempsey and Neiman. SLC Decl. ¶ 17. Brocade's remaining claims against Dempsey and Neiman included two claims for breach of the fiduciary duty of loyalty (one for lack of good faith and the other for failure of oversight), a claim for contribution relating to the class action settlement, and a claim for claw back of fees and expenses under 8 Del. Code § 145.

Brocade later entered into settlement agreements with Dempsey and Neiman. *Id.* ¶ 18. The settlement agreements call for Dempsey and Neiman to contribute, respectively, $200,000 and $450,000 to their attorneys to be applied as a credit against legal fees that Brocade otherwise might be obligated to pay on their behalf. *Id.* ¶¶ 19-20; Root Decl., Ex. A ¶ 1(b), Ex. B ¶ 1(b). Dempsey and Neiman also agreed to testify in the arbitration or any other proceeding that Brocade might bring arising from or relating to the allegations in the Complaint, and Brocade agreed to advance and pay their legal fees and expenses if Brocade were to call them as witnesses (or they are called as witnesses in connection with any proceedings brought by the SEC or United States Attorney). SLC Decl. ¶ 23; Root Decl., Ex. A ¶ 2-3, Ex. B ¶ 2-3. The settlement agreements otherwise provide that Brocade will not be responsible for any further advancement or indemnification of fees, expenses, fines or penalties, amounts of disgorgement, judgments, or settlements that Dempsey and/or Neiman might incur arising out of or relating to the allegations in the Complaint. SLC Decl. ¶ 23; Root Decl. Ex. A ¶ 3, Ex. B ¶ 3.

Brocade now moves for a partial lifting of the stay and for an Order approving the settlements between Brocade and, respectively, Dempsey and Neiman, and entering contribution bar orders in accordance with 10 Del. Code § 6304(b).

## ARGUMENT

This motion presents two separate, but related issues: whether the Court should approve Brocade's settlements with Messrs. Dempsey and Neiman, and whether the Court should enter an order barring contribution claims against them. As discussed below, Brocade believes it is free to settle this *direct* action without court approval, but the SLC has decided to seek the Court's approval. Entry of the requested bar orders does require Court action to provide the express protection that the settling defendants seek. Brocade will address each of these issues in turn.

III. **THE COURT SHOULD APPROVE THE SETTLEMENTS WITH MESSRS. DEMPSEY AND NEIMAN**

The Federal Rules of Civil Procedure and the law of the State of Delaware (Brocade's state of incorporation) require courts to approve settlements of *derivative* actions. This case, however, is no longer a *derivative* action, because the Court realigned Brocade as the sole plaintiff and substituted it for the original shareholder plaintiffs, who have been dismissed from the case. The case thus is now a *direct* action by Brocade, and neither federal nor Delaware law requires court approval of a corporation's settlement of a *direct* action against its former directors, officers, or employees. Nevertheless, out of respect for the Court's long involvement in this matter and the Court's repeatedly expressed interest in ensuring the prompt and appropriate resolution of claims arising out of the options matters, the SLC seeks the Court's approval of the settlements, because the SLC wishes to ensure that the Court does not object to the way the SLC has been handling this action on behalf of Brocade. *See* SLC Decl. ¶ 27.

Federal Rule of Civil Procedure 23.1 – which "applies when one or more shareholders . . . bring a *derivative* action to enforce a right that the corporation . . . may properly assert but has failed to enforce" – provides that "[a] *derivative* action may be settled, voluntarily dismissed, or compromised only with the court's approval" and upon notice to shareholders "in the manner that the court orders." Fed. R. Civ. P. 23.1(a), (c) (emphasis added). Delaware Chancery Court Rule 23.1 is to the same effect. Similarly, the Delaware Supreme Court held in *Zapata v. Maldonado*, 430 A.2d 779, 788-89 (Del. 1980), that court approval is required where a special litigation committee seeks to take over and *dismiss* a shareholder *derivative* action.

These rules do not apply to this case and to the settlements with Messrs. Dempsey and Neiman, however, because this case is no longer a *derivative* action. Brocade has been realigned as the sole plaintiff and has been substituted for the shareholder plaintiffs pursuant to this Court's Order and the shareholder plaintiffs' approval. The *Zapata* decision also does not control here, because the corporation in *Zapata* had *not* been realigned as the sole plaintiff; thus, the case that the special litigation committee sought to dismiss in *Zapata* was still a derivative action. In fact, the Delaware Court of Chancery has held that *Zapata* does not apply to a motion to *realign* a

corporation as a plaintiff to prosecute what was formerly a derivative action where there was no threat of collusion between the corporation and the defendants. *Bluth v. Bellow*, 1987 WL 9369 (Del. Ch. Apr. 9, 1987).

No decision to our knowledge has squarely addressed the precise question presented here: whether court approval is required when a corporation that has been *realigned as the sole plaintiff* seeks to settle a *direct* action against a former corporate director, officer, or employee. However, the concerns that animated Federal and Delaware Rules 23.1 and the *Zapata* decision do not apply in this context, because, as in *Bluth*, there is no hint of collusion between the realigned plaintiff corporation and the settling defendants, and no evidence that the corporation did not prosecute and resolve the action in good faith. To the contrary, Brocade vigorously litigated its claims against Messrs. Dempsey and Neiman and is obtaining reasonable settlements from them. Moreover, Brocade notes that, in *Valeant Pharm. Int'l v. Jerney*, 921 A.2d 732, 736 (Del. Ch. 2007), a corporation that had been realigned as the plaintiff in a former derivative action settled a claim against its former Chairman and CEO without seeking court approval, and the Chancery Court did not express any concern about that procedure.

Accordingly, the SLC believes it is free to settle claims against defendants in this direct action without court approval. SLC Decl. ¶ 27. However, as noted above, the SLC is keenly aware of the Court's longstanding interest in this case and its desire to ensure that the matter is handled appropriately. *Id.* Out of respect for the Court's work, and to ensure that the Court does not question whether the SLC is exceeding its authority, the SLC seeks the Court's approval of the settlements with Dempsey and Neiman, and the SLC respectfully asks the Court to grant its approval. *Id.*

From the SLC's point of view, the settlements with Dempsey and Neiman were driven largely by the economic realities of the situation, including the attorneys' fees and expenses that Brocade itself would incur if it were to continue litigating the claims against Dempsey and Neiman, plus the defense costs that Brocade would have to advance to them to defend those claims. *Id.* ¶¶ 24-26. These financial considerations were so serious that they predominated over consideration of the merits of Brocade's claims and Dempsey's and Neiman's defenses. *Id.* In

addition to the relieving Brocade of the costs that Brocade itself would incur through continued litigation, the settlements significantly reduced the legal fees and expenses that Brocade otherwise might have been obligated to pay on behalf of Dempsey and Neiman. *Id.* ¶¶ 19-20, 23.

Accordingly, Brocade believes that the settlements are reasonable in light of the circumstances presented here, and Brocade respectfully asks the Court to approve the settlements.

## IV. THE COURT SHOULD ENTER A CONTRIBUTION BAR

The settling parties also respectfully request the Court to issue an Order barring contribution claims (however denominated) against Messrs. Dempsey and Neiman. Delaware law precludes such claims where – as here – a settlement provides an appropriate judgment-reduction credit to nonsettling parties, and the Court has inherent authority to enter the requested bar order. The Complete Bar Order that Brocade asks the Court to enter in connection with the settlements with Mr. Dempsey and Mr. Neiman is identical (save for the names of the settling defendants) to the Complete Bar Order that the Court entered on March 13, 2009, in connection with its approval of Brocade's settlement with defendant Antonio Canova (Docket No. 435).

### A. Delaware Law Appears To Govern the Contribution Bar

Although the authorities on this issue are not clear, case law appears to suggest that the law underlying the claims being settled determines the extent to which the settlement must provide judgment-reduction credit to nonsettling parties in exchange for barring contribution claims – especially where the plaintiff's claims against the nonsettling parties are based on the same jurisdiction's laws as are the plaintiff's claims against the settling defendant. *See, e.g., In re Enron Corp. Sec., Deriv. & "ERISA" Litig.*, 2008 WL 2566867, at *9, *11 (S.D. Tex. June 24, 2008) (applying federal judgment-reduction law for credit as to federal claims, and Ohio judgment-reduction law for credit as to Ohio-law claims); *see also In re Heritage Bond Litig.*, 546 F.3d 667-81 (9th Cir. 2008) (applying federal judgment-reduction credit as to federal claims and Cal. Code Civ. P. § 877.6 for state-law claims).

In this case, the core claims being settled as to Messrs. Dempsey and Neiman are Delaware-law claims for breach of fiduciary duty. Moreover, the claims remaining against the nonsettling defendant in this action (Gregory Reyes) are Delaware-law claims, because the Court

dismissed Brocade's federal and California-law causes of action. Thus, Delaware law would appear to be the appropriate law to govern issues relating to the contribution bar and the accompanying judgment-reduction credit.

The nonsettling defendant can hardly complain about Brocade's willingness to apply Delaware law to the settlement agreements with Messrs. Dempsey and Neiman, because Delaware law appears to be *more* favorable to nonsettling parties than is California law – the law of the forum, which the Court might otherwise apply to state-law claims. Under California's good-faith settlement statute, a good-faith settlement reduces a judgment against jointly liable nonsettling defendants by the settlement amount (as long as the settlement has been made in good faith). Cal. Code Civ. P. § 877(a). As discussed below, however, Delaware law gives jointly liable nonsettling defendants a judgment-reduction credit equal to the settling defendant's "pro rata share" of the plaintiff's damages. 10 Del. Code § 6304(b). The settling parties thus have taken the conservative step of invoking Delaware, rather than California, law to govern the contribution bar and the judgment-reduction credit.

### B. The Requested Bar Order Is Necessary and Appropriate

The Delaware Code specifies the circumstances in which a settling party can be protected from contribution claims by nonsettling parties:

> A release by the injured person of one joint tort-feasor does not relieve the one joint tort-feasor from liability to make contribution to another joint tort-feasor unless the release is given before the right of the other tort-feasor to secure a money judgment for contribution has accrued, and provides for a *reduction, to the extent of the pro rata share of the released tort-feasor*, of the injured person's damages recoverable against all the other tort-feasors.

10 Del. Code § 6304(b) (emphasis added).

Paragraph 8(a) of the Dempsey Settlement Agreement and the Neiman Settlement Agreement provides for the pro-rata judgment-reduction credit contemplated by § 6304(b):

> [I]f Brocade obtains any judgment against [a] person or entity based upon, arising out of, or relating to a Released Claim or the Options Matters for which such person or entity and any of the Dempsey [or Neiman, as the case may be] Releasees are found to be jointly liable, that person or entity shall be entitled to a judgment credit equal to the Dempsey [or Neiman] Releasees' *pro rata share of the judgment* against such person or entity,

pursuant to the terms of Delaware law [emphasis added].

This contractual credit satisfies the terms of § 6304(b).[3]

Where, as here, the judgment-reduction credit comports with § 6304(b)'s requirement, the Delaware statute appears to be self-executing: it states that contribution claims will be barred if the proper credit is provided to the nonsettling parties. Nevertheless, the settlements here are each conditioned on entry of a Complete Bar Order to enforce the statute's terms: Dempsey and Neiman have the right to terminate the agreements if the Court does not enter the bar orders. *See* Root Decl., Ex. A ¶ 11(a); Ex. B ¶ 11(a). Dempsey and Neiman each insisted on this condition because they want to ensure they will be protected from contribution claims (and any other claims seeking to recover a nonsettling party's joint liability to Brocade).

Public policy strongly favors settlement, particularly of complex and multi-party suits such as this one. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1991). However, courts recognize that defendants are unlikely to settle if the settlement will not end their involvement in litigation and will leave them exposed to further liability. As the Ninth Circuit has noted, "[a]nyone foolish enough to settle without barring contribution is courting disaster." *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) (internal quotation marks omitted). *See also, e.g., Eichenholtz v. Brennan*, 52 F.3d 478, 486 (3d Cir. 1995) ("to encourage settlement in [multi-party] cases, modern settlements increasingly incorporate settlement bar orders into partial settlements").

Accordingly, courts have used their inherent powers to bar contribution claims (and other such claims based on the nonsettling parties' liability to the plaintiff) where the nonsettling parties are given the appropriate judgment-reduction credit in exchange for the loss of their contribution claims. *See, e.g., In re Heritage Bond Litig.*, 546 F.3d 667, 676 (9th Cir. 2008) ("We have already acknowledged the authority of a district court under federal common law to issue bar orders barring future claims for contribution and indemnity as part of its approval of a

---

[3] In an excess of caution, paragraph 8(a) of the Dempsey Settlement Agreement and the Neiman Settlement Agreement also stipulates what the judgment-reduction credit would be if a court were to determine that California or federal law should apply.

proposed settlement"); *Eichenholtz*, 52 F.3d at 486 ("we agree with the federal courts that have imposed the [contribution] bar as a matter of federal common law" in securities cases); *Franklin*, 884 F.2d at 1229 (declining "to prohibit orders that bar further contribution").

The scope of the proposed Complete Bar Order comports with legal requirements. As the Ninth Circuit recently explained (in applying federal and California law), a bar order "may only bar claims for contribution and indemnity and claims where the injury is the non-settling defendant's liability to the plaintiff." *In re Heritage Bond Litig.*, 546 F.3d at 680 (internal quotation marks omitted); accord *id.* at 681. The Complete Bar Order as to each of Mr. Dempsey and Mr. Neiman does just that: it seeks to bar only claims that arise out of the options-related matters where the alleged injury to the barred person or entity is that person's or entity's "alleged liability to Brocade . . . ." Root Decl., Ex. A ¶¶ 7(a), 7(b); Ex. B ¶¶ 7(a), 7(b). The Complete Bar Order thus does not purport to bar "independent" claims where the damages at issue do *not* flow from the barred person's or entity's liability to Brocade.

In the circumstances of this case, where Mr. Dempsey and Mr. Neiman seek to limit their future liability and have conditioned their settlements on obtaining contribution-bar orders, the parties respectfully ask the Court to exercise its equitable powers by issuing the Complete Bar Order prescribed in each of the Dempsey Settlement Agreement and the Neiman Settlement Agreement, in accordance with the terms of Delaware law.

## V. CONCLUSION

For the foregoing reasons, Brocade respectfully requests that the Court approve Brocade's settlements with Messrs. Dempsey and Neiman and enter the Complete Bar Order provided for in paragraph 8 of each of the Dempsey Settlement Agreement and the Neiman Settlement Agreement, in accordance with 10 Del. Code § 6304(b).

Dated: June 25, 2009

Respectfully submitted,

DEWEY & LEBOEUF LLP
/s/ Peter E. Root
Peter E. Root
Attorneys for Plaintiff
Brocade Communications Systems, Inc.